Filed 3/23/17 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RICHARD C. COLYEAR,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ROLLING HILLS COMMUNITY ASSOCIATION OF RANCHO PALOS VERDES et al.,<br><br>    Defendants and Respondents. | B270396<br><br>(Los Angeles County<br>Super. Ct. No. BS150539)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on February 28, 2017, be modified as follows:

1. In the second section, under the heading "Factual and Procedural History" and the subheading "A. Background," the first sentence should be deleted and replaced with the following language: Liu and Colyear are both homeowners in the planned residential community of Rolling Hills, located in the City of Rolling Hills.

2. In the same section, under the subheading "B. Liu's Application and Colyear's Complaint," in the paragraph that begins "As an adjoining property owner" the following phrase should be deleted: , but did not

otherwise seek relief from Liu.  So the sentence now reads:  Colyear alleged that Liu's application "may implicate" trees on Colyear's property.

The court has received and considered Appellant's Petition for Rehearing.  The Petition for Rehearing is DENIED.


_____

EPSTEIN, P.J.        MANELLA, J.        COLLINS, J.

Filed 2/28/17 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RICHARD C. COLYEAR, | B270396 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS150539) |
| v. | |
| ROLLING HILLS COMMUNITY ASSOCIATION OF RANCHO PALOS VERDES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert Leslie Hess, Judge.  Affirmed.

Law Offices of Michael D. Berk, Michael D. Berk; Greines, Martin, Stein & Richland, Kent Richland and Jonathan H. Eisenman for Petitioner and Appellant.

Hanson Bridgett, Christopher David Jensen; Alice Liu Jensen for Defendant and Respondent Yu Ping Liu.

# INTRODUCTION

Defendant homeowner Yu Ping Liu submitted an application to his homeowners association, defendant Rolling Hills Community Association of Rancho Palos Verdes (HOA), seeking to invoke the HOA's dispute resolution process against a neighbor who refused to trim trees blocking Liu's view. Plaintiff Richard Colyear, another neighbor and HOA member, sued Liu and the HOA, alleging that two of the offending trees were actually on his property, that the relevant tree-trimming covenant did not encumber his property, and therefore that Liu and the HOA were wrongfully clouding his title by seeking to apply such an encumbrance. Liu filed a special motion to strike the claims alleged against him under Code of Civil Procedure section 425.16, the anti-SLAPP statute.[1] The trial court granted the motion and Colyear now appeals.

We conclude Liu has made a prima facie showing that Colyear's complaint arises from Liu's statements made in connection with an issue of public interest, and therefore Liu's statements are protected under section 425.16, subdivision (e)(4) (section 425.16(e)(4)). In addition, Colyear cannot show a probability of success on the merits of his claims against Liu, particularly because Liu dismissed his application shortly after the lawsuit was filed and has never sought to invoke the HOA's tree-trimming process against Colyear. We therefore affirm.

---

[1] SLAPP is an acronym for Strategic Lawsuit Against Public Participation. All further statutory references are to the Code of Civil Procedure unless stated otherwise.

**FACTUAL AND PROCEDURAL HISTORY**

A.    *Background*

Liu and Colyear are both homeowners in Rancho Palos Verdes, a planned residential community in the city of Rolling Hills.  The property immediately north of Liu's property is owned by Richard and Kathleen Krauthamer.  Colyear's property is directly east of the Krauthamer's property, and kitty-corner to Liu's property.  Liu, Colyear, and the Krauthamers are all members of the HOA.

Each home within the community is subject to a declaration of covenants, conditions, and restrictions (CC&Rs).  The original declaration recorded in 1936, Declaration 150, set forth the specific property to be included in the community, conferred authority on the HOA to (among other things) "interpret and enforce" the CC&Rs, and detailed a number of CC&Rs applicable to the specified lots.  As relevant here, in article I, section 11, Declaration 150 conferred upon the HOA "the right at any time to enter on or upon any part" of a property subject to that declaration "for the purpose of cutting back trees or other plantings which, in the opinion of the [HOA], is warranted to maintain and improve the view of, and protect, adjoining property."

As the community expanded, the HOA entered into new declarations covering the additional properties; those declarations contained provisions that were similar, but not identical, to Declaration 150.  Declaration 150-M, recorded in 1944, added the property including the lots now owned by Liu, Colyear, and the Krauthamers.  Liu does not dispute that these three lots are burdened by Declaration 150-M, rather than by Declaration 150, and that 150-M does not contain a provision

3

similar to that in Declaration 150 regarding tree trimming.[2] According to Colyear, Declaration 150 applies to approximately 84 lots, Declaration 150-M applies to approximately 14 lots, and other declarations cover an additional 657 lots. Ultimately, the community subject to HOA jurisdiction grew to encompass the same boundaries as the city of Rolling Hills. (See *Russell v. Palos Verdes Properties* (1963) 218 Cal.App.2d 754, 758, disapproved of on another ground by *Citizens for Covenant Compliance v. Anderson* (1995) 12 Cal.4th 345.)

The HOA is governed by a board of directors. Starting in 1997, the board adopted resolutions to "establish procedures for its members to utilize the authority of the [HOA] to correct view impairments created by trees or other plantings." The board adopted the most recent version, Resolution 220, in 2012. Resolution 220 quoted the tree-trimming provision in article I, section 11 of Declaration 150 and stated that it "applies to some, if not all, properties in the City of Rolling Hills." Resolution 220 further made the following findings: "WHEREAS, the [HOA] has held public meetings, circulated drafts of policy alternatives, and received numerous written and oral communications from its members; [¶] WHEREAS, Rolling Hills enjoys both beautiful views and an abundance of mature trees, and values both . . . ; [¶] WHEREAS, the [HOA] wishes to adopt both guidelines and establish procedures for its members to utilize the authority of the [HOA] to correct view impairments, which cannot be resolved between the parties; [¶] WHEREAS, the Deed Restrictions give the [HOA] '. . . the authority to exercise such powers of control,

_____

[2] Whether other, more general language in Declaration 150-M could be applied to confer the same authority, as Liu seems to suggest, is not at issue in this appeal.

4

interpretation, construction, consent, decision, determination . . . and/or enforcement of covenants . . . as far as may legally be done.'" Based on these and other findings, Resolution 220 established guidelines for processing "all view impairment applications" submitted to the HOA, including submission of an application by the homeowner requesting tree removal, payment by the applicant of an administrative fee and agreement to pay the entire cost of tree trimming or removal, notice sent by the HOA to the affected owner and contiguous property owners, a decision and report by a View Committee, and a process by which to appeal that decision to the board. Resolution 220 also noted that the "City of Rolling Hills Ordinance Chapter 17.26 provides a procedure for abatement of view impairment; so [HOA] members have another alternative for view restoration."

As early as 2002, Colyear began to inquire of the board (based on the predecessor to Resolution 220) whether it was the HOA's position that the tree-trimming provision was enforceable against his lot. At the time, he was told it was not, and he would "have to use the City's Ordinance" to settle any view disputes.

B.    *Liu's Application and Colyear's Complaint*

In January 2015, in accordance with the process outlined in Resolution 220, Liu filed an "Application for Assistance to Restore View" with the HOA, identifying the Krauthamer property as the location of the obstructing trees or shrubs. In a statement attached to the application, Liu explained that the view from his residence was obstructed by several trees and hedges on the south side of the Krauthamers' property. He said he had attempted to resolve the issue by speaking to Richard Krauthamer starting in late 2012, and by contacting the HOA's city manager in June 2013 and requesting that she informally

5

mediate the dispute.  As a result, according to Liu, Krauthamer agreed to trim his trees but never did so.  Liu also attached to his application several photographs of the offending trees and hedges.  The application does not reference Colyear or Colyear's property.

As an adjoining property owner, Colyear received notice of Liu's application shortly after it was submitted.  Colyear then filed the instant action on March 4, 2015, seeking writ relief and naming Liu, the HOA, its board, and individual board members as respondents.  Colyear alleged that Liu's application "may implicate" trees on Colyear's property, but did not otherwise seek relief from Liu.

Liu withdrew his application to the HOA on April 14, 2015.  As a result, the HOA never issued any decision on the application.  Following the withdrawal, the HOA had no pending applications involving either Liu or Colyear's property.

In August 2015, the trial court sustained the demurrers filed by all defendants, and granted leave to amend.  Colyear filed an amended pleading, including a petition for writ of traditional mandate and prohibition against the HOA and its board, and a verified complaint "for Declaratory Relief, Injunctive Relief, To Quiet Title, and for Damages" against all defendants (FAC).  The FAC sought a declaration, among other things, that Colyear's lot was not subject to the tree-trimming covenant in Declaration 150 and that such covenant could not be enforced against his lot or other lots not encumbered by that declaration, and that Resolution 220 was void to the extent it purported to enforce such tree-trimming covenants in this manner.  Colyear further alleged that some of the offending trees designated by Liu on the photos attached to his application were on Colyear's lot, thus Liu "sought

6

to apply the Liu Application to cut back trees and plantings on Colyear's lot." Moreover, although Liu had withdrawn his application, Colyear alleged that Liu "expressly refused to acknowledge and agree" that he would not in the future "seek to enforce the Trees and Plantings Covenant against Colyear's lot."

The FAC also sought to quiet title "to Colyear's lot against adverse claims" by defendants "in that each claims that Colyear's lot is covered by the Trees and Plantings Covenant in Declaration150, although Colyear's lot is not covered by the Trees and Plantings Covenant, and seeks, or claims the right to seek, to enforce the Trees and Plantings Covenant against Colyear's lot." In addition, the FAC sought injunctive relief barring defendants from seeking to enforce the relevant covenant against Colyear's lot or any other lots not encumbered by Declaration 150, as well as compensatory and punitive damages from the HOA and the board for alleged fraud and breaches of fiduciary duties.

C.     *Liu's Anti-SLAPP Motion*

Liu filed a special motion to strike the FAC pursuant to section 425.16, arguing that his view impairment application was protected under section 425.16(e)(4), as it constituted a written statement made in connection with an issue of public interest.[3] Further, he asserted Colyear could not establish a probability of success on his claims based on standing, mootness, and ripeness grounds.

---

[3] Liu's motion also stated in passing that his conduct should be protected under section 425.16(e)(2) as a statement "made in connection with an issue under consideration or review" by an "official proceeding authorized by law," but offered no other argument or citation on this point.

Colyear opposed the motion to strike, arguing that Liu's application to the HOA involved a private matter and thus was not protected conduct and that Colyear's lawsuit did not arise out of the application, but rather from the "underlying controversy" regarding the proper application of Declaration 150. In his accompanying declaration, Colyear stated he had "confirmed" that two of the trees identified in Liu's application were located on Colyear's lot. Specifically, Colyear declared, "I [have] carefully reviewed the photograph or photographs attached to the Liu Application . . . which . . . has arrows added to it to point to trees that Liu requested to be cut. . . . I also walked my lot and the Krauthamers' lot in the area where both lots meet the Liu property. Based on those observations, I now know for a fact that the trees and plantings that Liu claims in the Liu Application should be cut include two trees on my lot."[4] Colyear also declared his belief that "the Board's acceptance of the Liu Application and initiation of proceedings for enforcement of the Trees and Plantings Covenant on behalf of Liu . . . clouds and encumbers the title to the Krauthamers' lot and to my lot, as well as such other lots and decreases the utility and market value of those lots." The Krauthamers both submitted declarations stating they "believed" one or two of the trees at issue was on Colyear's lot.

Colyear attached numerous exhibits in support of his opposition, including Declarations 150 and 150-M, Resolution 220

[4] The trial court subsequently granted Liu's objections to multiple paragraphs in Colyear's declaration, including these statements regarding the placement of two trees. During oral argument, the court noted Colyear's declaration provided no foundation for how Colyear "knew where the boundary line" lay between his and the Krauthamers' property and that Colyear's statements were conclusory.

8

and its predecessors, and Liu's application. He also attached his correspondence to the board in 2002, as well as letters from several other homeowners on the same issue. In a letter dated September 4, 2002, addressed to the board and the attorney for the HOA, homeowner Philip Belleville referenced his presentation made at a prior hearing "on the proposed Resolution concerning trees and view," and then reiterated his position that the proposed resolution should not purport to apply to all properties, including those not encumbered with a tree-trimming provision in the applicable CC&Rs. Belleville noted that, while he does "not have a view to protect," he was nevertheless "vitally interested" in the issue, including the potential for exposure to expensive litigation against the HOA resulting in increased fees to the members and because "[i]t is very disturbing that the proposed Resolution exceeds the norms for such provisions of similar communities." Belleville sent another letter in late 2005 objecting to proposed changes in Resolution 181 (a predecessor to 220), noting that the prior resolution had been adopted "after numerous hearings and public participation" and again objecting to language that could "wrongly cloud the property rights of the Members involved" and "lead to more costly and alienating litigation." Another homeowner wrote a similar letter in 2015.

The trial court granted Liu's motion. First, the court found Liu had met his burden to establish his conduct was protected under section 425.16(e)(4) because "the issue of view" was one of "general concern" to the homeowners in the community. Liu was "attempting to invoke the view covenants in his particular favor, but they are view covenants that impact, if not all, then a significant number of the people in this community association." The trial court further found that Colyear's lawsuit arose out of

9

Liu's protected conduct, noting that Liu's application was the reason Colyear filed this action. Finally, the court found that Colyear had not carried his burden to show probability of success on the merits, particularly following the dismissal of Liu's application.

Colyear timely appealed the granting of the motion to strike.

## DISCUSSION

### I. *Section 425.16 and Standard of Review*

"A SLAPP is a civil lawsuit that is aimed at preventing citizens from exercising their political rights or punishing those who have done so. '"While SLAPP suits masquerade as ordinary lawsuits such as defamation and interference with prospective economic advantage, they are generally meritless suits brought primarily to chill the exercise of free speech or petition rights by the threat of severe economic sanctions against the defendant, and not to vindicate a legally cognizable right."' [Citations.]" (*Simpson Strong–Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21 (*Simpson* ).)

The Legislature has declared that "it is in the public interest to encourage continued participation in matters of public significance, and . . . this participation should not be chilled through abuse of the judicial process." (§ 425.16, subd. (a).) To this end, the Legislature enacted section 425.16, subdivision (b)(1), which authorizes the filing of a special motion to strike for "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." [T]he Legislature expressly provided that the anti-SLAPP statute 'shall be

construed broadly.' (§ 425.16, subd. (a).)" (*Simpson, supra*, 49 Cal.4th at p. 21.)

Analysis of a motion to strike pursuant to section 425.16 involves a two-step process. (*Simpson, supra*, 49 Cal.4th at p. 21.) "First, the defendant must make a prima facie showing that the plaintiff's 'cause of action . . . aris[es] from' an act by the defendant 'in furtherance of the [defendant's] right of petition or free speech . . . in connection with a public issue.' (§ 425.16, subd. (b)(1).) If a defendant meets this threshold showing, the cause of action shall be stricken unless the plaintiff can establish 'a probability that the plaintiff will prevail on the claim.' [*Ibid*.]" (*Simpson, supra*, 49 Cal.4th at p. 21, fn. omitted.) "Only a cause of action that satisfies both prongs of the anti-SLAPP statute— i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to be stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

We review a trial court's decision on a special motion to strike de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.) In engaging in the two-step process, we consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) "However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).)

11

**II.** *Liu's Claims Arise From Protected Activity*

Under the first prong of a motion to strike under section 425.16, the moving party has the burden of showing that the cause of action arises from an act in furtherance of the right of free speech or petition—i.e., that it arises from a protected activity. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965.) Thus, the moving party must establish both (1) that its act constituted protected activity; and (2) the opposing party's cause of action arose from that protected activity. Colyear challenges Liu's showing on both of these steps, so we examine each in turn.

A. *Protected Activity*

First, we must determine whether Liu's speech was in fact protected conduct. To meet this burden, Liu must demonstrate that his statements fit one of the four categories of conduct set forth in section 425.16, subdivision (e): "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

Liu asserts his conduct is protected under subdivision (e)(2) as a statement made in connection with an "official proceeding authorized by law," or, alternatively, under subdivision (e)(4) as a statement made in connection with "an issue of public interest."

12

We agree that Liu's conduct here is protected by section 425.16(e)(4); thus, we need not reach the issue of whether the HOA process is an "official proceeding" under subdivision (e)(2).

Colyear argues that Liu's application involved a private tree-trimming dispute between two neighbors and therefore does not qualify as a matter of "public interest." "Section 425.16 does not define 'an issue of public interest.' Nevertheless, the statute requires the issue to include attributes that make it one of public, rather than merely private, interest. [Citation.] A few guiding principles can be gleaned from decisional authorities. For example, 'public interest' is not mere curiosity. Further, the matter should be something of concern to a substantial number of people. Accordingly, a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest. Additionally, there should be a degree of closeness between the challenged statements and the asserted public interest. The assertion of a broad and amorphous public interest that can be connected to the specific dispute is not sufficient. [Citation.] One cannot focus on society's general interest in the subject matter of the dispute instead of the specific speech or conduct upon which the complaint is based." (*Grenier v. Taylor* (2015) 234 Cal.App.4th 471, 481 (*Grenier*).) Cases that have found an issue of public interest have done so where "the subject statements either concerned a person or entity in the public eye [citations], conduct that could directly affect a large number of people beyond the direct participants [citations] or a topic of widespread, public interest [citation]." (*Rivero v. American Federation of State, County and Municipal Employees, AFL–CIO* (2003) 105 Cal.App.4th 913, 924 (*Rivero*).)

Within these parameters, "'public interest' within the meaning of the anti-SLAPP statute has been broadly defined to include, in addition to government matters, "'private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity.'" (*Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107, 115.)" (*Ruiz v. Harbor View Community Assn.* (2005) 134 Cal.App.4th 1456, 1468 (*Ruiz*).) "[I]n cases where the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging participation in matters of public significance." (*Du Charme, supra*, 110 Cal.App.4th at p. 119; see also *Grenier, supra*, 234 Cal.App.4th at p. 482.)

Applying these principles, several courts have found protected conduct in the context of disputes within a homeowners association. In *Ruiz*, for example, a homeowner sued his homeowners association alleging letters written by association counsel defamed him. (*Ruiz, supra*, 134 Cal.App.4th at p. 1463-1465.) The letters concerned a dispute over the association's rejection of Ruiz's building plans, and Ruiz's complaints that the association was not applying its architectural guidelines evenhandedly. (*Ibid*.) The court concluded the letters fell within section 425.16(e)(4), noting, (a) the letters were written during an ongoing dispute between Ruiz and the association over denial of Ruiz's plans and the application of the association's architectural guidelines, and (b) the dispute was of interest to a definable

14

portion of the public, i.e., residents of 523 lots, because they "would be affected by the outcome of these disputes and would have a stake in [association] governance." (*Id*. at pp. 1467-1469.) Moreover, the attorney's letters "were part of the ongoing discussion over those disputes and 'contribute[d] to the public debate' on the issues presented by those disputes. [Citation.]" (*Id*. at p. 1469.)

Similarly, in *Country Side Villas Homeowners Assn. v. Ivie* (2011) 193 Cal.App.4th 1110, 1113, the homeowner raised objections with her homeowners association over a change in practices regarding whether individual homeowners or the association had responsibility to pay for maintaining balconies and siding on individual units. The association filed suit against Ivie, seeking declaratory relief in interpreting the association's governing documents regarding maintenance obligations. (*Ibid*.) The court found that Ivie's complaints to the board were a matter of public interest, because her statements concerned issues "that affected all members of the association," including whether all members would have to pay for maintenance costs assumed by the association. (*Id*. at p. 1118; see also *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 479 [protecting allegedly defamatory statements about the competence of a manager of a homeowners association]; *Lee v. Silveira* (2016) 6 Cal.App.5th 527, 540 [protecting complaints by homeowners association board members against other board members regarding board's decision-making process in approving a large roofing project and a management company contract, as affecting "a broad segment, if not all," association members]; *Grenier, supra*, 234 Cal.App.4th at p. 483 [defamatory statements accusing church pastor of theft and misuse of church funds, and

15

of abuse, are of interest to the church's 500 or more members, and therefore are of "public interest"]; *Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 15 [concluding that development of a mall, "with potential environmental effects such as increased traffic and impaction on natural drainage, was clearly a matter of public interest"].)  By contrast, in *Rivero, supra*, 105 Cal.App.4th at p. 924, the court rejected anti-SLAPP protection for complaints in a union newsletter alleging a janitorial supervisor mistreated his employees.  The court held that the allegedly defamatory statements were not a matter of public interest as they concerned "the supervision of a staff of eight custodians by Rivero, an individual who had previously received no public attention." (*Ibid*.)

Here, the record presents sufficient evidence to sustain Liu's burden that at the time he submitted his application, there was an ongoing controversy, dispute, or discussion regarding the applicability of tree-trimming covenants to lots not expressly burdened by them, and the HOA's authority to enforce such covenants.  While the evidence in the record is somewhat sparse, it is sufficient to show that the issue was an ongoing topic of debate between the board and homeowners, resulting in multiple hearings, letters, and several changes to the board's policy on the matter starting as early as 2002 and continuing up to the current dispute.  In this context, Liu's application sought to invoke the HOA process at the center of that dispute, as he invoked the process under Resolution 220 to request authority from the board to trim trees on a neighbor's property that admittedly was not expressly burdened by Declaration 150.  Indeed, this is the crux of Colyear's argument for injecting himself into this dispute— that Liu's conduct in submitting the application unleashed a

16

process unfair to Colyear and all other homeowners not subject to a tree-trimming covenant and thereby clouded his title with an improper encumbrance.  As such, Colyear's current suggestion that Liu's application involves nothing more than a private tree-trimming dispute between two neighbors is unavailing.

Colyear does not dispute that the issue of the board's authority to apply tree-trimming covenants to all lots in the community is a subject of interest to the entire membership of the community, and therefore meets the definition of "public interest" under section 425.16(e)(4).  (See, e.g., *Damon, supra*, 85 Cal.App.4th at p. 479 ["Although the allegedly defamatory statements were made in connection with the management of a private homeowners association, they concerned issues of critical importance to a large segment of our local population. 'For many Californians, the homeowners association functions as a second municipal government. . . .' [Citation.]"].)  Instead, he argues that the proper focus for this step in the anti-SLAPP inquiry must be much narrower, and that here, Liu's application only directly involved two homeowners—Liu and the Krauthamers—and was therefore a private dispute rather than an issue of public interest.  Colyear further asserts that to the extent *his* complaint raised the broader issues of enforceability of the tree-trimming covenant and HOA governance, his conduct cannot serve to insulate Liu's statements.  We agree with the principle that we must avoid looking to "society's general interest in the subject matter of the dispute instead of the specific speech or conduct upon which the complaint is based." (*World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc.* (2009) 172 Cal.App.4th 1561, 1570; see also *Commonwealth Energy Corp. v. Investor Data Exchange, Inc.* (2003) 110 Cal.App.4th 26, 34

17

[cautioning against the "synecdoche theory of public issue in the anti-SLAPP statute," where "[t]he part [is considered] synonymous with the greater whole"].)

However, we are not persuaded that Liu's statement here lacks the requisite degree of closeness with the asserted public interest. As discussed, Liu's application itself invoked the same HOA processes that Colyear (and other community members) sought to challenge. The cases rejecting anti-SLAPP protection on this basis involve a much greater level of abstraction to a "broad and amorphous public interest," and are thus distinguishable. (*WFG, supra*, 172 Cal.App.4th at p. 1570 [rejecting defendants' attempt to tie their conduct—allegedly reaching out to their former employer's customers to promote a competitor business—to broader issues of employee mobility and competition]; see also, e.g., *Consumer Justice Center v. Trimedica International, Inc.* (2003) 107 Cal.App.4th 595, 601 ["Trimedica's speech is not about herbal supplements in general. It is commercial speech about the specific properties and efficacy of a particular product."]; *Commonwealth, supra*, 110 Cal.App.4th at p. 34 ["hawking an investigatory service is not an economics lecture on the importance of information for efficient markets"].) Accordingly, we conclude Liu has established he made a statement in connection with an issue of public interest within the meaning of section 425.16(e)(4).

B.      *Claim Arises From Protected Activity*

We next turn to Colyear's claim that, even if Liu's statement was protected, Colyear's complaint did not arise out of that statement. We disagree.

"Our Supreme Court has recognized the anti-SLAPP statute should be broadly construed [citation] and that a plaintiff

18

cannot avoid operation of the anti-SLAPP statute by attempting, through artifices of pleading, to characterize an action as a garden variety tort or contract claim when in fact the claim is predicated on protected speech or petitioning activity. [Citation.] Accordingly, we disregard the labeling of the claim [citation] and instead 'examine the *principal thrust or gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies'. . . . [Citation.]" (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1271-1272.) We assess the principal thrust by identifying "[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim." (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 189.) "If the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute. [Citation.]" (*Hylton*, *supra*, 177 Cal.App.4th at p. 1272.) "[T]he critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) "In other words, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.]'" (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 670.)

Colyear argues that the dispute here arose from "the question of the applicability of a tree-trimming covenant"; conversely, he argues, "Liu's application to enforce the covenant against Colyear's property was simply the trigger for Colyear's suit to resolve that question." He further notes that the trial

19

court's reliance on "but-for causation" in analyzing the issue was therefore in error. To the extent the trial court focused on whether Liu's application *caused* Colyear to file a lawsuit, such an analysis would provide an insufficient basis from which to find that Liu had established the lawsuit *arose out* of his protected conduct. Based on our independent review, however, we conclude that Liu did make the requisite showing.

Liu's application did not simply "trigger" Colyear's lawsuit, as Colyear claims. Rather, the gravamen of Colyear's claims against Liu was the allegation that by submitting an application to the HOA concerning property unencumbered by Declaration 150, Liu invoked an invalid HOA process and clouded Colyear's title. As such, the *only* injury-producing conduct Colyear alleges Liu committed was Liu's petitioning act.

These circumstances are factually distinct from cases, including those cited by Colyear, in which the defendant's protected speech was ancillary to the heart of the plaintiff's claims. In *City of Cotati v. Cashman*, *supra*, 29 Cal.4th at pp. 71, 72 for example, owners of mobilehome parks brought a declaratory relief action against the city in federal court seeking a judicial determination that the city's mobilehome park rent control ordinance constituted an unconstitutional taking. In response, the city sued the park owners in state court, also requesting a declaration regarding the constitutionality and enforceability of the rent control ordinance. (*Id*. at p. 72.) The city conceded that its state lawsuit was triggered by the federal action and was an attempt to "gain a more favorable forum" in which to litigate the issue. (*Id*. at p. 73.) As the Supreme Court explained, "the mere fact an action was filed after protected activity took place does not mean it arose from that activity." (*Id*.

at pp. 76–77.)  Instead, because the "fundamental basis" for *both* actions was the "same underlying controversy respecting [the rent control] ordinance," the city's lawsuit "therefore was not one arising from [the park owners'] federal suit" and "was not subject to a special motion to strike."  (*Id.* at p. 80; see also, e.g., *Talega Maintenance Corporation v. Standard Pacific Corporation* (2014) 225 Cal.App.4th 722, 729 [homeowners association's claim against board members arose from "the act of spending money in violation of [the board members'] fiduciary duties," not from the vote that precipitated such expenditure]; *McConnell v. Innovative Artists Talent and Literary Agency, Inc.* (2009) 175 Cal.App.4th 169, 176-177 [talent agents' claims against former employer for retaliation and wrongful termination were based on employer's course of conduct preventing the agents from performing their work, not the letter that communicated the purported job modifications]; *Martinez, supra,* 113 Cal.App.4th at p. 189 [holding that "the gravamen of Plaintiffs' second cause of action, alleging the Product was not merchantable because it contained dangerous properties and ingredients that caused injury, is based on the nature and effects of the Product itself, not the marketing efforts undertaken by" the defendant].)  Here, by contrast, Liu's protected conduct—his application to the HOA—served as the foundation for Colyear's claims against him.

　　In sum, we conclude that Liu met his burden on the first prong of the anti-SLAPP motion to strike.  We therefore turn to the second prong, i.e., whether Colyear met his burden to demonstrate a probability of prevailing on his claims against Liu.

21

### III. *Colyear Cannot Demonstrate a Probability of Prevailing Against Liu*

Once a defendant satisfies the first prong of the anti-SLAPP analysis, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396.) "In making this assessment it is 'the court's responsibility . . . to accept as true the evidence favorable to the plaintiff. . . .' [Citation.] The plaintiff need only establish that his or her claim has 'minimal merit' [citation] to avoid being stricken as a SLAPP." (*Soukup, supra*, 39 Cal.4th at p. 291.)

Colyear contends he has shown his likelihood of success on his quiet title claim against Liu with evidence that: (1) he has title; and (2) Liu made a claim adverse to that title by invoking the tree-trimming covenant against Colyear's property. However, the trial court found that Colyear's quiet title claim against Liu was mooted by the withdrawal of Liu's application. We agree. Assuming Liu's application implicated Colyear's property when filed, Liu withdrew his application before any action was taken, leaving no pending challenges against Colyear's property. Thus, at the time Colyear filed his FAC, there was no "adverse claim" by Liu against Colyear's property (§§ 760.020 and 761.020 [elements to quiet title claim]), and no effective relief the court could grant against Liu. (See, e.g., *Giles v. Horn* (2002) 100 Cal.App.4th 206, 227 [court "cannot render opinions "'. . . upon moot questions or abstract propositions, or to declare principles

22

or rules of law which cannot affect the matter in issue in the case before it"'"]; *Wilson v. L. A. County Civil Service Com.* (1952) 112 Cal.App.2d 450, 453 ["'although a case may originally present an existing controversy, if before decision it has, through act of the parties or other cause, occurring after the commencement of the action, lost that essential character, it becomes a moot case or question which will not be considered by the court'"].)[5]  In light of these findings, we need not reach the parties' alternate arguments regarding ripeness, standing, or the admissibility of Colyear's statements regarding ownership of the trees.

As such, we conclude that Colyear has not shown a probability of success on the merits of his quiet title claim.

## DISPOSITION

The order granting Liu's motion to strike pursuant to section 425.16 is affirmed.  Liu is awarded his costs on appeal.

**CERTIFIED FOR PUBLICATION**

COLLINS, J.

We concur:

EPSTEIN, P. J.                                             MANELLA, J.

---

[5] Colyear argues that the trial court should have considered his claim because Liu's conduct was capable of repetition, yet could continue to evade the courts' review.  Colyear has raised this argument for the first time on appeal; it is therefore forfeited.  (See, e.g., *Sanchez v. Truck Ins. Exchange* (1994) 21 Cal.App.4th 1778, 1787.)  We are not persuaded by Colyear's suggestion that we may review this issue as a "pure question of law which is presented by undisputed facts.' [Citation.]"  (*Ibid*.)

23