Filed 5/18/26  Hunsberger v. Bodo-Price CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| STEVEN HUNSBERGER,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CORNELIA BODO-PRICE et al.,<br><br>    Defendants and Appellants. | D087340<br><br>(Super. Ct. No. CVPS2402921) |

APPEAL from a judgment of the Superior Court of Riverside County, Randall D. White, Judge.  Affirmed.

Morris & Stone, Aaron P. Morris and Deanna Stone Killeen for Defendants and Appellants.

Donald R. Holben & Associates and Karen S. Spicker for Plaintiff and Respondent.

Steven Hunsberger sued Cornelia Bodo-Price and Richard Gulyas (collectively, Defendants) for defamation per se, defamation per quod, false light, and intentional infliction of emotional distress.  Hunsberger alleged that Defendants made defamatory statements about him in various formats, to the effect that they saw him naked in a community jacuzzi and that he should be removed from the board of the homeowner's association (HOA).  Defendants filed a special motion to strike Hunsberger's complaint as a strategic lawsuit against public participation (SLAPP) (Code Civ. Proc.,

§ 425.16),[1] which the trial court denied. On appeal, they assert the trial court erroneously concluded they had not met the first prong of the anti-SLAPP analysis, and that they would have prevailed under the second prong had the trial court reached it. We conclude, as the trial court did, that the underlying causes of action do not arise out of protected activity as required by the first prong of the anti-SLAPP analysis and therefore affirm the order denying Defendants' special motion to strike.

## I.    FACTUAL AND PROCEDURAL HISTORY[2]

### A. Hunsberger's Complaint

In the operative complaint, which was filed on May 7, 2024, Hunsberger alleged that he, Bodo-Price and Gulyas all lived in a community known as Camino Del Sol. The Camino Del Sol community sits on five acres of land and includes 74 condominium units, two swimming pools, and two jacuzzies.

At the time of the complaint, Hunsberger was the acting president of the Camino Del Sol HOA. He alleged that Defendants were "disgruntled homeowners" that wanted him off of the HOA board.

According to the complaint, on February 18, 2024, Hunsberger was using one of the jacuzzies when Bodo-Price began to yell at him from her balcony, approximately 37 feet away. Hunsberger could not hear what Bodo-Price was saying, but he later learned that she was falsely accusing him of

---

[1]    Further unspecified statutory references are to the Code of Civil Procedure.

[2]    We summarize the relevant well-pleaded factual allegations in the complaint, and defendants' declarations in support of their motion. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062 (*Park*).)

2

being naked. Hunsberger further alleged that the next day, Defendants either posted or caused to be posted a flyer on the HOA bulletin board stating that Hunsberger, the board vice-president, was "NAKED in the jacuzzi" and demanding his resignation from the HOA board. Hunsberger removed the flyer, but the next day, February 20, Defendants "plastered" several more flyers around the complex making the same allegedly defamatory statements. Hunsberger included numerous photos of the flyers as exhibits to the complaint.

On March 5, 2024, the HOA held a meeting at the Camino Del Sol clubhouse. There were at least 21 residents present in person at the meeting, plus four more attending via Zoom. During the meeting, Bodo-Price stated that Hunsberger "was seen naked in the south jacuzzi," that he "should be banned from using the common area pool/spa for six months," and that "he should resign from his position as President" of the HOA board.[3]

On March 16, 2024, Hunsberger used the jacuzzi again and this time Gulyas, Bodo-Price's husband, shouted, from the same balcony, "are you naked again?"

Finally, on March 25, 2024, at a Zoom HOA meeting, with 12 residents in attendance, another individual, Gary Ewer repeated Defendants' allegedly defamatory statements, and said that Hunsberger "should immediately resign," because of the nudity. On March 30, 2024, Ewer distributed an e-mail to at least eight residents, in which he repeated the same defamatory statements and also included a copy of the flyers that had been posted around the community. Hunsberger included a copy of the e-mail as an exhibit to the complaint.

---

[3] According to a declaration by Bodo-Price, due to a resignation, Hunsberger became President of the Board on February 22, 2024.

Based on these allegations, Hunsberger asserted causes of action for defamation per se, defamation quid per quod, false light, and intentional infliction of emotional distress.

## B. The Anti-SLAPP Special Motion to Strike

In response, Defendants filed a special motion to strike the complaint, or, in the alternative, to strike certain enumerated paragraphs, pursuant to section 425.16.

As to the first prong of the anti-SLAPP analysis, Defendants asserted the posters were free speech in connection with a public issue; namely, that Hunsberger being naked in the community jacuzzi was the "final straw that precipitated efforts by the HOA members to initiate a recall action against him." In addition, Defendants argued that the statements made by Bodo-Price at the HOA meeting on March 5 were made in a public forum, in connection with an issue of public interest, and were therefore protected by section 425.16, subdivision (e)(3) or (4). In the alternative, they asserted the statements that were made during an official proceeding authorized by law and thus protected by section 425.16, subdivision (e)(1) or (2). Finally, they asserted other statements, such as Gulyas yelling "are you naked again?" from the balcony were likewise related to Hunsberger's fitness for an HOA board position.

As to the second prong, Defendants asserted that they were not involved in the flyers, and that Hunsberger could offer no evidence to the contrary; that Bodo-Price's statements at the HOA's meetings were absolutely privileged; and that Gulyas's statements from the balcony were not published to a third person. Thus, Hunsberger could not prove defamation per se, defamation per quod, or false light. In addition, they asserted that Hunsberger had not alleged any statements or conduct so

4

outrageous as to satisfy a claim for intentional infliction of emotional distress.

Defendants supported their motion with personal declarations. Bodo-Price declared that she "clearly" saw Hunsberger emerge from the jacuzzi naked on February 18, 2024. She immediately e-mailed the HOA property manager, Jeniffer Huntsman, and another HOA board member, Marcia Stein, to report the incident. Huntsman confirmed that she had retrieved security camera footage from the jacuzzi area, but Defendants were unable to obtain a copy. Bodo-Price was totally unaware of the flyers and did not have any role in posting them around the community.

Bodo-Price said that Hunsberger became president of the HOA on February 22, 2024, after another board member resigned, and that Ewer prepared a recall petition prior to the March 5, 2024 meeting. Bodo-Price explained further that Hunsberger had been on the HOA board in some capacity since 2023, and that "the talk of recalling Hunsberger has been going on since at least early 2023." The recall petition was "based on a number of acts by Hunsberger, including misuse of HOA resources, Hunsberger requesting restraining orders on neighbors, which were denied, acts that essentially amounted to mail fraud, claims by Hunsberger of misappropriation, that were also dismissed, his harassment of other neighbors, his lack of ethics, and lack of knowledge of the Civil Code and [the HOA] Rules and Regulations."[4]

Regarding the incident on March 16, Bodo-Price said that Gulyas took a picture of Hunsberger on his cellphone and then walked down to the jacuzzi to confront him. She asserted that Gulyas did not yell from the balcony.

---

[4] According to Bodo-Price, Hunsberger was recalled by a vote of 28 to 18, and was officially removed from the Board in August 2024.

Gulyas confirmed the same in his own declaration, and stated that he too had nothing to do with the flyers being posted around the community.

Hunsberger opposed the special motion to strike. He asserted Defendants' conduct and statements were criminal, unprotected, and not subject to the anti-SLAPP statute. He argued further the statements were not made in a public form or in connection with a public issue. As to the second prong of the anti-SLAPP analysis, Hunsberger asserted that he had set forth credible claims for all four causes of action, and that Defendants "failed to prove their statements were constitutionally protected, posted in a public form and in connection with a public issue, and Defendants have not shown that their defamatory statements are true. Therefore Defendants have failed to meet their burden of proof." Hunsberger supported his opposition with a declaration from his attorney, in which the attorney attested that she had direct knowledge of or was informed and believed that all facts stated therein were true.

### C. The Trial Court's Ruling

The trial court denied Defendants' special motion to strike. The court found that Defendants had failed to meet their burden to establish that the statements at issue were made in connection with a public issue or an issue of public interest, as is necessary to fall under section 425.16, subdivision (e)(3) or (4).

Relying on *Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107 (*Du Charme*), the court explained that "in cases where the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of

6

encouraging *participation* in matters of public significance." (*Id.* at p. 119.) But here, the court found, Defendants did not provide sufficient evidence or argument to establish the statements at issue were made "in the context of an ongoing controversy, dispute or discussion." (*Ibid.*)

The court explained further, "It appears that the actual effort to recall [Hunsberger] only occurred after the alleged defamatory statements were made. Moreover, the alleged defamatory statements request resignation—which is different than an effort to solicit votes on a recall or an active elections as seen in the cases cited." In addition, the court found that the recall was based on issues related to Hunsberger's competency in his role as a board member, and that there was no evidence "that the recall petition was specifically related to the subject matter of the defamatory statements—that is, using the jacuzzi nude." Thus, the court concluded the statements did not concern an issue of public interest and were not protected by the anti-SLAPP statute. Given that conclusion the trial court declined to reach the second prong of the anti-SLAPP analysis.

Defendants filed a timely notice of appeal.

## II. DISCUSSION

Defendants raise largely the same issues they did in the trial court on appeal. They assert the flyers and Gulyas' statement to Hunsberger on March 16 were made in connection with a public issue—i.e., Hunsberger's fitness for office—and that the statements Bodo-Price made during HOA meetings satisfy the first prong under each of section 425.16, subdivision (e)(1) through (4). Further, they continue to assert that Hunsberger cannot show a probability that he will prevail on any of the asserted causes of action.

### A. Relevant Legal Principles and Standard of Review

In passing section 425.16, the Legislature declared "that it is in the public interest to encourage continued participation in matters of public

7

significance, and that this participation should not be chilled through abuse of the judicial process."  (§ 425.16, subd. (a).)

To that end, section 425.16, subdivision (b)(1) provides:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

Section 425.16, subdivision (e) defines an " 'act in furtherance of a person's right of petition or free speech,' " as used in subdivision (b)(1) to include:  "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

"A claim arises from protected activity when that activity underlies or forms the basis for the claim."  (*Park, supra,* 2 Cal.5th at p. 1062.)  " 'Our Supreme Court has recognized the anti-SLAPP statute should be broadly construed [citation] and that a plaintiff cannot avoid operation of the anti-SLAPP statute by attempting, through artifices of pleading, to characterize an action as a garden variety tort or contract claim when in fact the claim is

8

predicated on protected speech or petitioning activity. [Citation.] Accordingly, we disregard the labeling of the claim [citation] and instead "examine the *principal thrust or gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies." ' " (*Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes* (2017) 9 Cal.App.5th 119, 134 (*Colyear*).) " 'If the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute.' " (*Ibid.*)

"We review de novo the grant or denial of an anti-SLAPP motion. [Citation.] We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity." (*Park, supra,* 2 Cal.5th at p. 1067.) "We do not, however, weigh the evidence, but accept the plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law." (*Ibid.*)

The analysis requires a two-step process. "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage. If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable

9

judgment. If not, the claim is stricken. Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396; see also *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1010 ["courts should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected"].)

## B. The Asserted Claims Do Not Arise Out of Protected Activity

Each of the causes of action in the complaint arise from a common set of allegedly injury-producing conduct (see *Colyear, supra,* 9 Cal.App.5th 119, 134), i.e., statements made by Defendants in various formats and forums suggesting that Hunsberger was seen using the community jacuzzi naked and the assertion that residents should demand his resignation from the HOA board as a result.

Defendants assert that the flyers posted around the community are protected activity pursuant to section 425.16, subdivision (e)(3) and (4); that the statements made at HOA meetings are protected activity pursuant to either section 425.16, subdivision (e)(1) and (2) or section 425.16, subdivision (e)(3) and (4); and that the statements made by Gulyas to Hunsberger directly in the jacuzzi area also "related to the ongoing controversy of Hunsberger being naked in the spa and his fitness for a board position." We address each category in turn and conclude, as the trial court did, that Defendants have not carried their threshold burden in step one.

### 1. The Flyers

We begin with the flyers posted around the community asserting that Hunsberger was using the jacuzzi naked and telling residents to demand his resignation.

10

Both section 425.16, subdivision (e)(3) and (4) require that the relevant statement(s) be made "in connection with a public issue or an issue of public interest." Defendants assert that the flyers meet this requirement because the jacuzzi incident "was the final straw that precipitated efforts by the HOA members to initiate a recall action against [Hunsberger]."

In *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468 (*Damon*), another panel of this court considered whether section 425.16, subdivision (e)(3) applied to a defamation claim brought by the former manager of an HOA against several individuals who wrote and published "articles, editorials, and letters to the editor in the Village Voice newsletter, which was published by a private homeowners club." (*Id*. at p. 472.)

The court began by finding that the HOA board meetings were a "public forum" as defined by section 425.16, in part because an HOA "board is in effect 'a quasi-government entity paralleling in almost every case the powers, duties, and responsibilities of a municipal government.'" (*Damon, supra,* 85 Cal.App.4th at p. 475.) However, we note that the community at issue in *Damon* was much larger than the one at issue here. There, the court explained, "Approximately 3,000 residents were affected by the policies adopted at Board meetings. *On this record*, the Board meetings were 'public forums.'" (*Ibid*., italics added.) Likewise, the court concluded, the "Village Voice was a public forum in the sense that it was a vehicle for communicating a message about public matters to a large and interested community." (*Id*. at p. 476.)

Next, the court explained that "section 425.16, subdivision (e)(3) requires not only that the statement be made in a public forum, but also that it concern an issue of public interest." (*Damon, supra,* 85 Cal.App.4th at p. 477.) It continued, "the definition of 'public interest' within the meaning of

11

the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity." (*Id*. at p. 479.)  In *Damon,* "each of the alleged defamatory statements concerned (1) the decision whether to continue to be self-governed or to switch to a professional management company; and/or (2) Damon's competency to manage the Association.  These statements pertained to issues of public interest within the Ocean Hills community.  Indeed, they concerned the very manner in which this group of more than 3,000 individuals would be governed—an inherently political question of vital importance to each individual and to the community as a whole."  (*Ibid*.)

Defendants assert that *Damon* supports protection of the flyers under section 425.16, subdivision (e)(3) or (4).  Not so.  While there are some similarities, there are also some key differences.  The community at issue here was much smaller, 74 condominium units as compared to 3,000 residents in *Damon.*  More significantly, Damon was hired by the HOA as a general manager (*Damon, supra,* 85 Cal.App.4th at p. 471), whereas here, Hunsberger was a member of the community that served as vice president and then president of the HOA on a volunteer basis.  And still more significantly, the articles at issue in *Damon* addressed ongoing concerns about "Damon's handling of numerous aspects of the Association, including the security department, employee relations, maintenance activities, and contractor selection." (*Damon*, at p. 472.)  By contrast, the flyers at issue here were specific to a personal allegation that Hunsberger had used the jacuzzi naked.  While they did suggest that residents demand his resignation from the board, they did not otherwise discuss his fitness for the position, or

any specific issues that members had with his role, nor did they continue an ongoing conversation of importance to the community.

In *Du Charme*, the court explained that the statements at issue in *Damon* "were made in the context of a public debate about how the community would be governed in the future," and, specifically, " 'the Board elections and recall campaigns.' " (*Du Charme, supra,* 110 Cal.App.4th at p. 116.) By contrast, the court in *Du Charme* determined that a public statement that two union managers had "been removed from office for financial mismanagement" of the union was not entitled to protection because it was "unconnected to any discussion, debate or controversy." (*Id.* at p. 118.) The court explained, "Du Charme's termination was a fait accompli; its propriety was no longer at issue. Members of the local were not being urged to take any position on the matter." (*Ibid.*) Thus, the court concluded, "[t]o grant protection to mere informational statements, in this context, would in no way further the statute's purpose of encouraging *participation* in matters of public significance." (*Ibid.*)

This case requires us to analyze statements that fall between those at issue in *Damon* and *Du Charme*. The flyers at issue here do ask the members of the community to "demand" Hunsberger's resignation, but it does not seem, on the record before us, that they were made in the context of an ongoing discussion regarding Hunsberger's fitness for the position. Rather, they are specific to the allegation that Hunsberger was naked in the jacuzzi. As the trial court here explained, there is nothing in the complaint to suggest that there was an ongoing discussion regarding improper activities by Hunsberger when the flyers were posted, or that the eventual recall petition was based on Hunsberger being nude in the jacuzzi.

13

Bodo-Price does suggest in her declaration that "the talk of recalling Hunsberger has been going on since at least early 2023." However, this single statement is not sufficient to establish that the flyers—which were plainly focused on the sensational accusation about Hunsberger being naked in the jacuzzi—were related to an ongoing issue or controversy. Bodo-Price does not identify who specifically was talking about recalling Hunsberger or what grounds allegedly existed for such a recall prior to the jacuzzi incident. Rather, Bodo-Price explains that Hunsberger became president of the HOA on February 22, 2024, after the jacuzzi incident, and that Ewer prepared a recall petition soon after that, and prior to the March 5, 2024 meeting. The flyers asked residents to demand Hunsberger's resignation from the board, apparently because of the alleged behavior of being nude in the jacuzzi, but made no reference to an ongoing discussion regarding recall, or his fitness as a board member in any other respect.

As Bodo-Price also explained in her declaration, the recall petition that circulated *after* the jacuzzi incident and the flyers, was "based on a number of acts by Hunsberger, including misuse of HOA resources, Hunsberger requesting restraining orders on neighbors, which were denied, acts that essentially amounted to mail fraud, claims by Hunsberger of misappropriation, that were also dismissed, his harassment of other neighbors, his lack of ethics, and lack of knowledge of the Civil Code and [the HOA] Rules and Regulations." The e-mail attached to the complaint suggests the "misuse of resources" at issue in the recall was based on Hunsberger allegedly using HOA resources to discredit "the residents who witnessed and reported Mr. Hunsberger's nudity." Thus, while it appears that the personal dispute between Hunsberger and Defendants may have played a role in the recall effort, there is no suggestion in the record before us that the recall

14

effort was occurring before the jacuzzi incident, or that the jacuzzi accusations furthered the relevant debate as to Hunsberger's fitness for the position. (See *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 150 (*FilmOn*) [" 'it is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate' "].) Rather, it appears that Defendants wanted Hunsberger off the board (for reasons that are not apparent in the record before us) and, at most, used the jacuzzi accusation to further their own personal campaign against him.

At its core, the accusation that Hunsberger was in the jacuzzi nude appears to be a personal attack, and not commentary on his fitness for the HOA board. "[A] defendant cannot convert speech that would otherwise not be entitled to anti-SLAPP protection into protected activity by 'defining the[] narrow dispute by its slight reference to the broader public issue.' " (*Bernstein v. LaBeouf* (2019) 43 Cal.App.5th 15, 24; accord *FilmOn, supra,* 7 Cal.5th at p. 152; *Colyear, supra,* 9 Cal.App.5th at p. 134 [collateral or incidental ties to protected activity insufficient to trigger anti-SLAPP protection].)

Based on the foregoing, we conclude the flyers were not "in connection with a public issue or an issue of public interest," and therefore are not protected by section 425.16, subdivision (e)(3) or (4).

### 2. The Statements at Meetings

Defendants assert Bodo-Price's oral statements at the March 5, 2024 HOA meeting that "Steven was seen naked in the south jacuzzi," that "Steven should be banned from using the common area pool/spa for six months," and that Hunsberger "should resign from his position as President [referring to the HOA Board]" satisfy either section 425.16, subdivision (e)(1) and (2) or section 425.16, subdivision (e)(3) and (4).

15

As to section 425.16, subdivision (e)(3) and (4), Defendants rely on their discussion of the allegedly protected statements in the flyers to assert the statements at the HOA meeting were also protected. Our analysis regarding the flyers is likewise applicable to the statements made at the HOA meeting, and for the same reasons, we conclude the statements at the March 5 HOA meeting were not "in connection with a public issue or an issue of public interest," and therefore are not protected by section 425.16, subdivision (e)(3) or (4).

But this does not end our analysis. Defendants also contend that the statements made at the HOA meeting on March 5, 2024, are protected under section 425.16, subdivision (e)(1) and (2), because, they assert, the HOA meeting was an official proceeding authorized by law. The court addressed this exact issue in *Talega Maintenance Corp. v. Standard Pacific Corp.* (2014) 225 Cal.App.4th 722 (*Talega*).

The court in *Talega* began by noting that, "Neither party cited, nor have we found, any case directly addressing the issue of whether a homeowners association meeting is an 'official proceeding,'" and then examining several cases addressing the same issue in different contexts. (*Talega, supra,* 225 Cal.App.4th at pp. 730–732, see also *Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192 [concluding hospital peer review disciplinary proceeding are official proceedings]; *Fontani v. Wells Fargo Investments, LLC* (2005) 129 Cal.App.4th 719 [concluding statements made to National Association of Securities Dealers were part of an official proceeding]; *Garretson v. Post* (2007) 156 Cal.App.4th 1508 [act of noticing a nonjudicial foreclosure sale was a private, contractual matter and not part of an official proceeding]; *Donovan v. Dan Murphy Foundation* (2012)

16

204 Cal.App.4th 1500 [board meeting of nonprofit charitable board was not an official proceeding authorized by law].)

The *Talega* court then concluded, "In this spectrum of cases, homeowners association meetings fall outside the scope of official proceedings." (*Talega, supra,* 225 Cal.App.4th at p. 732.) The court explained, "although courts have recognized the similarities between [an HOA] and a local government, even going so far as to describe a homeowners association as a 'quasi-governmental entity, paralleling the powers and duties of a municipal government' [citation], [an HOA] is not performing or assisting in the performance of the actual government's duties, as was the case in *Kibler* and *Fontani*. Further, unlike the hospital peer review board decision in *Kibler*, decisions by the board of [an HOA] are not reviewable by administrative mandate. Thus they have not been delegated government functions to the same extent." (*Talega,* at p. 732, italics omitted.) We agree with this analysis.[5]

Defendants attempt to compare this case to *Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, in which the court found that statements made by university administrators in the context of a Title IX investigation were protected. (*Id.* at pp. 763, 768.) But there, the court noted the investigation was authorized by the Education Code and thus, was analogous to the disciplinary proceeding at issue in *Kibler*. (*Laker,* at p. 764.) For the reasons discussed in *Talega*, this case does not fall into the same category. (See *Talega, supra*, 225 Cal.App.4th at p. 732.) Likewise, the other case Defendants rely upon, *Schwarzburd v. Kensington Police*

---

5    Defendants assert the court in *Talega* simply opted to analyze the case under section 425.16, subdivision (e)(3) and (4) "as prior cases had done." We reject that characterization.

17

*Protection & Community Services Dist. Bd.* (2014) 225 Cal.App.4th 1345 concerned a vote by members of a "public" board, not a private HOA, and also is not analogous to the HOA meetings or proceedings at issue here. (*Id.* at pp. 1348, 1354 [board of unincorporated community at issue "organized under the Community Services District Law (Gov. Code, § 61000 et seq.)"].)

For these reasons, we conclude the statements at the March 5 HOA meeting are not protected by section 425.16, subdivision (e)(1), (2), (3), or (4).

### 3. The Statements Made as Hunsberger Exited the Jacuzzi

Finally, the complaint alleges that, on March 16, 2024, Gulyas shouted to Hunsberger at the jacuzzi, "Are you naked again?," "Are you naked?" Hunsberger alleges further in the complaint that Gulyas "did this for the purpose of harassing and humiliating him," and that anyone in the area could have heard the statement.

Regarding these allegations, Defendants assert: "as to the first prong, the comment still related to the ongoing controversy of Hunsberger being naked in the spa and his fitness for a Board position." This is the totality of Defendants' argument in this regard. For the reasons we have discussed in connection with the flyers, we conclude the statements made as Hunsberger exited the jacuzzi were not made "in connection with a public issue or an issue of public interest," and therefore do not fall under the protection of section 425.16, subdivision (e)(3) or (4).

Because we conclude that Defendants have not met the first prong of the anti-SLAPP analysis, we need not consider whether Hunsberger has met his burden to establish the merit of the underlying claims.

18

### III.   DISPOSITION

The order is affirmed.  Respondent Hunsberger is awarded costs on appeal.

KELETY, J.

WE CONCUR:

McCONNELL, P. J.

RUBIN, J.