Filed 10/13/20; modified and certified for publication 11/3/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MIRANDA SWAIN, Plaintiff and Respondent, v. LASERAWAY MEDICAL GROUP, INC., Defendant and Appellant. | B294975 (Los Angeles County Super. Ct. No. SC129042) |

APPEAL from an order of the Superior Court of Los Angeles County, Nancy L. Newman, Judge.  Affirmed.

Prindle, Goetz, Barnes & Reinholtz, Jack R. Reinholtz, Douglas S. De Heras and Lauren S. Gafa, for Defendant and Appellant.

Phillips, Erlewine, Given & Carlin, Nicholas A. Carlin and Brian S. Conlon, for Plaintiff and Respondent.

# INTRODUCTION

Miranda Swain filed a complaint against LaserAway Medical Group, Inc., alleging she suffered skin injuries as a result of laser hair removal treatment she received from LaserAway.  LaserAway filed a petition to compel arbitration, which the trial court denied, ruling the arbitration agreement between Swain and LaserAway was unenforceable because it was unconscionable.  LaserAway appeals, and we affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *Swain Sues LaserAway*

In March 2018 Swain filed this action against LaserAway, alleging she received laser hair removal treatment from LaserAway in June 2017 that caused her "several weeks of pain and irritation" and hyperpigmentation of her skin.  When Swain received a second round of treatment in August 2017, the employee performing the treatment used the laser on an area of skin covered by a tattoo.  The laser burned the skin, "mutilated" the tattoo, left "an open wound," and caused Swain "months of pain."

In addition to making allegations about her specific experience at LaserAway, Swain complained about several of LaserAway's business practices.  Swain alleged that LaserAway falsely advertises that experienced medical professionals perform laser hair removal treatment, even though qualified physicians do not perform or supervise the procedures patients receive at LaserAway, and that LaserAway falsely advertises the treatment is safe, effective, and causes few side effects.  Swain asserted

2

causes of action for negligence, fraud, breach of contract, battery, unjust enrichment, and violations of the Consumer Legal Remedies Act, Unfair Competition Law, and False Advertising Law. Swain sought, among other relief, monetary damages for her injuries and an injunction prohibiting LaserAway from continuing its allegedly unlawful practices.

B. *The Trial Court Denies LaserAway's Petition To Compel Arbitration*

LaserAway filed a petition to compel arbitration and attached a copy of an arbitration agreement purportedly executed by Swain stating she agreed to arbitrate any dispute "as to whether any medical services . . . were unnecessary or unauthorized or were improperly, negligently or incompetently rendered."[1] Swain claimed that she did not remember executing the arbitration agreement and that, if she did sign it, the agreement was unconscionable.

Swain contended the agreement was procedurally unconscionable because it was a contract of adhesion drafted by

_____

[1] LaserAway filed a declaration by Andrea Heckmann, its corporate counsel and chief compliance officer, who explained all patients must "create a profile" on LaserAway's online portal using a "unique log in ID and password" and then "electronically execute the Arbitration Agreement" and other documents before receiving treatment. "Once a patient has checked the box at the bottom of the Arbitration Agreement, the portal . . . automatically creates a signature and date step . . . ." Heckmann retrieved from LaserAway's online portal the arbitration agreement attached to LaserAway's petition, which included an electronic stamp with Swain's name and date indicating she consented to the agreement.

LaserAway. She stated that on the day she first received treatment LaserAway provided her an electronic tablet that "had a few forms for [Swain] to flip through and sign," but that no one at LaserAway explained any of the forms. Swain contended that, if she signed an arbitration agreement, the agreement was one of the forms on the tablet. Swain argued the agreement was substantively unconscionable because it covered "the types of claims a patient is likely to bring while excepting the types of claims LaserAway could bring against its patients," required the parties to "split arbitration costs on a pro rata basis without limit," and prohibited a patient from seeking public injunctive relief. Swain also filed a declaration stating that her monthly income was approximately $2,000 and that she could not afford the fees typically charged by arbitrators.

LaserAway did not dispute it provided Swain an electronic tablet with several forms before she received treatment, but argued in its reply memorandum the arbitration agreement was not procedurally unconscionable because it was a "standalone agreement" with "prominently featured" terms.[2] LaserAway argued that, although the arbitration agreement did allow LaserAway to sue patients in court for "unpaid costs for services rendered," such a provision did not render the agreement unconscionable. LaserAway argued the cost-sharing provision was not unconscionable because it followed the language of Code

---

2       We augment the record to include LaserAway's reply in support of its petition to compel arbitration, filed October 26, 2018. (See Cal. Rules of Court, rule 8.155(a)(1)(A).)

4

of Civil Procedure section 1284.2.[3]  LaserAway did not dispute that the provision prohibiting Swain from seeking public injunctive relief was unconscionable, but argued that the court could sever that provision from the agreement.

The trial court denied the petition to compel arbitration. The court ruled that, although LaserAway met its burden to show Swain agreed to arbitrate her claims, the arbitration agreement was unconscionable.  The court found that Swain "had no bargaining ability to reject or negotiate the terms of the contract" and "was given the forms to review and then immediately taken to [a] room for her procedure" and that no one at LaserAway told her she could print the forms or opt out of the arbitration agreement.  The court also noted, however, there was no evidence Swain could not have printed or taken additional time to review the documents.   The court concluded that the agreement had "a minimal degree of procedural unconscionability," but that for the reasons Swain argued the agreement was "permeated by substantive unconscionability" and unenforceable.  LaserAway timely appealed.

---

[3]     Code of Civil Procedure section 1284.2 provides that, unless the parties otherwise agree, "each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator . . . ."  Statutory references are to the Code of Civil Procedure.

5

# DISCUSSION

A. *Standard of Review*

"The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense . . . ." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236; accord, *Baker v. Italian Maple Holdings, LLC* (2017) 13 Cal.App.5th 1152, 1157-1158; *Harris v. TAP Worldwide, LLC* (2016) 248 Cal.App.4th 373, 380.) "An order denying a petition to compel arbitration is appealable." (*Perez v. U-Haul Co. of California* (2016) 3 Cal.App.5th 408, 415; see § 1294, subd. (a).)

""'[G]enerally applicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements without contravening" the [Federal Arbitration Act]' or California law."[4] (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*); see *Torrecillas v. Fitness International, LLC* (2020) 52 Cal.App.5th 485, 492 ["Generally applicable contract defenses, like unconscionability, can invalidate arbitration agreements."].) "Whether an agreement is unconscionable presents a question of law which we review de novo." (*Williams v. Atria Las Posas* (2018) 24 Cal.App.5th 1048, 1055; accord, *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 236; see *Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 702 ["Absent conflicting extrinsic evidence, the validity of an arbitration clause, including whether it is subject to revocation as unconscionable, is a question of law subject to de novo review."].)

---

[4] LaserAway does not argue the Federal Arbitration Act applies.

"But 'factual issues may bear on that determination. [Citations.] Thus, to the extent the trial court's determination that the arbitration agreement was unconscionable turned on the resolution of conflicts in the evidence or on factual inferences to be drawn from the evidence, we consider the evidence in the light most favorable to the trial court's ruling and review the trial court's factual determinations under the substantial evidence standard.'" (*Williams,* at p. 1055; accord, *Carbajal*, at p. 236; *Carlson v. Home Team Pest Defense, Inc.* (2015) 239 Cal.App.4th 619, 630.) As always, it is "'appellant's burden to affirmatively show error.'" (*Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1457; see *Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 ["a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate . . . that the trial court committed an error that justifies reversal"].)

B.      *Swain Met Her Burden To Show the Arbitration Agreement Was Unconscionable*

LaserAway contends that it met its initial burden to show Swain agreed to arbitrate her claims and that Swain failed to meet her burden to show the agreement was unconscionable. We assume the former contention and disagree with the latter.

"The general principles of unconscionability are well established. . . . [T]he unconscionability doctrine "'has both a procedural and a substantive element.'" [Citation.] 'The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh

or one-sided.' [Citation.] [¶] Both procedural and substantive unconscionability must be shown for the defense to be established, but 'they need not be present in the same degree.' [Citation.] Instead, they are evaluated on "'a sliding scale.'" [Citation.] '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to' conclude that the term is unenforceable. [Citation.] Conversely, the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required. . . . 'The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.'" (*OTO*, *supra*, 8 Cal.5th at pp. 125-126; see *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*); *Lange v. Monster Energy Co.* (2020) 46 Cal.App.5th 436, 445.)

1.  *The Arbitration Agreement Was Procedurally Unconscionable*

"A procedural unconscionability analysis 'begins with an inquiry into whether the contract is one of adhesion.' [Citation.] An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.'" (*OTO, supra*, 8 Cal.5th at p. 126; see *Armendariz, supra*, 24 Cal.4th at p. 113.) "[T]he adhesive nature of" an arbitration agreement "is sufficient to establish some degree of procedural unconscionability." (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 915 (*Sanchez*); accord, *Long Beach Unified School Dist. v. Margaret Williams, LLC* (2019) 43 Cal.App.5th 87, 103; see *Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1244 ["'Ordinary contracts of

8

adhesion, although they are indispensable facts of modern life that are generally enforced [citation], contain a degree of procedural unconscionability even without any notable surprises'"]; *Gatton v. T-Mobile USA, Inc.* (2007) 152 Cal.App.4th 571, 583 ["'When the weaker party is presented the clause and told to "take it or leave it" without the opportunity for meaningful negotiation, oppression, and therefore procedural unconscionability, are present.'"].)

  There was no dispute the arbitration agreement was an adhesive contract.[5] LaserAway's chief compliance officer, Andrea Heckmann, stated in her declaration that "LaserAway's customary practice is to require all patients seeking treatment[ ] to create a profile on the Company's mylaseraway system . . . and electronically execute the Arbitration Agreement." Swain stated in her declaration that, although she did not recall creating a profile on LaserAway's system, when she arrived at LaserAway's treatment center an employee presented her with an electronic tablet that "had a few forms" and that she "understood that if [she] wanted the laser hair removal treatment" she "had to flip through the forms and sign and date the last page." Under both parties' version of events, LaserAway, "the party with superior bargaining power," presented the pre-drafted arbitration agreement to Swain, the party with inferior bargaining power, "'on a take-it-or-leave-it basis.'" (*OTO, supra*, 8 Cal.5th at

---

5 In its reply memorandum in support of the petition to compel arbitration, LaserAway did not argue that the arbitration agreement was not adhesive, but argued that, even if it was "presented on a 'take-it-or-leave-it' basis, the fact that [an] agreement is required does not make it unenforceable absent other factors."

p. 126.)  This establishes a minimal degree of procedural unconscionability such that "closer scrutiny of [the agreement's] overall fairness is required."  (*Ibid.*; accord, *Prima Donna Development Corp. v. Wells Fargo Bank, N.A.* (2019) 42 Cal.App.5th 22, 38.)

LaserAway argues the arbitration agreement is not procedurally unconscionable because the agreement contains a provision that allowed Swain to opt out of the agreement within 30 days.  LaserAway forfeited this argument by failing to raise it in the trial court.  (See *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603; *Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes* (2017) 9 Cal.App.5th 119, 137, fn. 5.)  The argument is also meritless.  For one thing, it is not clear under the terms of the agreement how Swain could have opted out.  The opt-out provision states:  "This agreement may be revoked by written notice delivered to the physician within 30 days of agreement."  Swain claimed she never saw a physician, either before or during treatment (or even knew who her physician was), and LaserAway did not contend or provide any evidence to the contrary.  At best, this provision was confusing to a consumer like Swain.  (See *OTO*, *supra*, 8 Cal.5th at p. 129 [that "the agreement appears to have been drafted with an aim to thwart, rather than promote, understanding" supported a finding of procedural unconscionability]; *Long Beach Unified School Dist. v. Margaret Williams, LLC*, *supra*, 43 Cal.App.5th at p. 104 [same].)  For another, even if Swain could have opted out of the agreement by other means—for example, by sending notice to the LaserAway office where she received treatment—an opt out provision does not insulate an arbitration agreement from a finding of procedural unconscionability.  (See *Gentry v. Superior Court*

10

(2007) 42 Cal.4th 443, 470 [arbitration agreement had a degree of procedural unconscionability even though there was a 30-day opt-out provision].)

Moreover, the agreement was procedurally unconscionable for reasons other than, and in addition to, the adhesive nature of the agreement. For procedural unconscionability, "'"'[o]ppression occurs where a contract involves lack of negotiation and meaningful choice, *surprise* where the allegedly unconscionable provision is hidden within a prolix printed form.'"'" (*OTO*, *supra*, 8 Cal.5th at p. 126; accord, *Davis v. TWC Dealer Group, Inc.* (2019) 41 Cal.App.5th 662, 671; see *Lange v. Monster Energy Co.*, *supra*, 46 CalApp.5th at p. 447 ["procedural unconscionability . . . 'focus[es] on oppression and surprise due to unequal bargaining power'"].) "'The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.'" (*OTO*, at pp. 126-127.) At least three of these five circumstances were present here. The trial court found LaserAway provided the agreement to Swain to sign "immediately" before she was "taken to a room for her procedure," demonstrating that LaserAway gave Swain little time to review, and exerted pressure on her to sign, the agreement. As the trial court also found, Swain did not have an attorney to assist her when she signed the agreement.

11

There were also elements of surprise.  The trial court found LaserAway gave Swain the agreement, along with other forms for her to review, when she arrived for treatment.  Although the arbitration agreement was only four pages long, it was buried among other forms Swain had little time to review.  The court also found that no one provided Swain with a copy of the forms she signed or explained she had the right to opt out of the arbitration agreement.  (See *Wherry v. Award, Inc.* (2011) 192 Cal.App.4th 1242, 1247 [that "no one described the agreement's contents and plaintiffs were given but a few minutes to review and sign it" supported a finding of procedural unconscionability]; *Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238, 1252 [that defendants "made no effort to highlight the presence of the arbitration provision" supported a finding of procedural unconscionability].)  The coercive manner in which LaserAway presented the agreement, and LaserAway's failure to explain its terms or offer Swain a copy, significantly decreased the likelihood Swain would realize she could opt out of the agreement (assuming she understood she had agreed to arbitrate in the first place).  And Swain's description of her experience at LaserAway's treatment center was substantial evidence supporting the trial court's findings.  (See *Williams v. Atria Las Posas, supra*, 24 Cal.App.5th at p. 1055.)

On appeal, LaserAway points out that the date stamp on the arbitration agreement, which purports to show Swain executed the agreement on June 16, 2017, is six days before June 22, 2017, the date Swain alleged in her complaint she received her first round of laser hair removal treatment.  LaserAway, however, did not argue in the trial court Swain signed the arbitration agreement days before she went to the

12

LaserAway treatment center, nor did LaserAway identify for the trial court the apparent discrepancy between the arbitration agreement, Swain's declaration, and the complaint. In fact, LaserAway did not present any evidence of the date Swain received her treatment. Therefore, LaserAway forfeited any argument based on these facts. (See *Johnson v. Greenelsh*, *supra*, 47 Cal.4th at p. 603; *Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes*, *supra*, 9 Cal.App.5th at p. 137, fn. 5.) And even if LaserAway had not forfeited the argument, we defer to the trial court's resolution of any factual dispute over the circumstances in which Swain signed the arbitration agreement. (See *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 [in "proceeding to resolve a petition to compel arbitration" the trial court "sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion"]; *Gamma Eta Chapter of Pi Kappa Alpha v. Helvey* (2020) 44 Cal.App.5th 1090, 1097 ["When reviewing a trial court's ruling on a motion to compel arbitration, we accept the trial court's resolution of disputed facts when supported by substantial evidence."].)

LaserAway also argues that the arbitration agreement was not adhesive because laser hair removal treatments are "nonessential services" and that Swain had "ample opportunity to look elsewhere for a more favorable contract or seek services elsewhere." Again, LaserAway forfeited this argument by failing to make it in the trial court. And LaserAway's argument is again wrong on the merits. While the "nonessential nature" of the goods or services in a contract (*Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 822) and "[t]he availability of similar goods or services elsewhere" (*Szetela v. Discover Bank*

13

(2002) 97 Cal.App.4th 1094, 1100) are relevant to evaluating whether an arbitration agreement is unconscionable, they do not negate the procedural unconscionability of an otherwise adhesive contract.  (See *Gatton v. T-Mobile USA, Inc.*, *supra*, 152 Cal.App.4th at p. 583 ["we reject the contention that the existence of market choice altogether negates the oppression aspect of procedural unconscionability"]; *id.* at p. 585 ["absent unusual circumstances, use of a contract of adhesion establishes a minimal degree of procedural unconscionability notwithstanding the availability of market alternatives"].)  These factors may increase the degree of substantive unconscionability required to avoid enforcement of the agreement, but "courts are not obligated to enforce highly unfair provisions that undermine important public policies simply because there is some degree of consumer choice in the market."  (*Ibid.*; see *Lhotka*, at p. 824 ["plaintiffs made a sufficient showing to establish at least a minimal level of . . . procedural unconscionability" where the company that led a mountaineering expedition "presented its [arbitration] terms as both nonnegotiable and no different than what plaintiffs would find with any other provider" (italics omitted)]; *Gatton,* at p. 586 [plaintiffs showed "a minimal degree of procedural unconscionability arising from the adhesive nature of [a cellular subscriber] agreement" notwithstanding market alternatives]; see also *Sanchez*, *supra*, 61 Cal.4th at p. 914 [arbitration agreement was adhesive even though the plaintiff purchased a "luxury item" and could "negotiate the price"].)

Finally, even if, as LaserAway contends (for the first time on appeal), Swain signed the arbitration agreement before she went to the LaserAway treatment center and the agreement allowed Swain to opt out, and even if laser hair removal

14

treatment is a nonessential service that Swain could have received elsewhere, the arbitration agreement would still have at least a minimal degree of procedural unconscionability. Because LaserAway drafted the agreement and required Swain to sign the agreement before receiving treatment, the agreement was adhesive, warranting further review of the agreement's substantive terms. (See *OTO, supra*, 8 Cal.5th at p. 126.)

2.     *The Agreement Had a High Degree of Substantive Unconscionability, Rendering It Unenforceable*

"Substantive unconscionability examines the fairness of a contract's terms. . . . [The] 'doctrine is concerned not with "a simple old-fashioned bad bargain" [citation], but with terms that are "unreasonably favorable to the more powerful party."' [Citation.] Unconscionable terms '"impair the integrity of the bargaining process or otherwise contravene the public interest or public policy"' or attempt to impermissibly alter fundamental legal duties." (*OTO, supra*, 8 Cal.5th at p. 130; accord, *Baltazar v. Forever 21, Inc., supra*, 62 Cal.4th at pp. 1244-1245; *Lange v. Monster Energy Co., supra*, 46 Cal.App.5th at p. 448.)

In her opposition to LaserAway's petition to compel arbitration, Swain argued the agreement was substantively unconscionable because it required Swain to arbitrate the claims she was likely to bring—claims alleging LaserAway's services "were unnecessary or unauthorized or were improperly, negligently or incompetently rendered"—but did not require LaserAway to arbitrate the claims it was likely to bring—claims "to collect fees from patients." LaserAway admitted "the [a]rbitration agreement in the present case contains a single

15

limitation" that allows LaserAway to file an action in court "to recover unpaid costs for services rendered," but asserted, without further explanation, the provision was reasonable. The trial court ruled that, because the "provision expressly permits the exclusion of claims likely to be brought by" LaserAway, it was "one-sided[ ]" and substantively unconscionable.

In its opening brief on appeal, LaserAway does not mention or address this portion of the trial court's order; LaserAway addresses only the trial court's discussion of the fee-splitting provision and the prohibition on Swain seeking injunctive relief. It was not until Swain pointed out in her respondent's brief this (the primary) basis of the trial court's substantive unconscionability ruling that LaserAway addressed it. And when LaserAway finally did address the issue, LaserAway changed its position and argued, for the first time in its reply brief on appeal, that the arbitration agreement did not exempt LaserAway's claims for unpaid fees. LaserAway, however, forfeited this argument by failing to make it in its opening brief.[6] "'Even when our review on appeal "is de novo, it is limited to issues which have been adequately raised and supported in [the appellant's opening] brief. [Citations.] Issues not raised in an appellant's brief are [forfeited] or abandoned."'" (*Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 557; accord, *State Water Resources Control Bd. Cases* (2006) 136 Cal.App.4th 674, 836; see *California Building Industry Assn. v.*

---

[6]   LaserAway's new argument in its reply brief on appeal is that the provision is actually an anti-waiver provision providing that, if LaserAway "files an action in court to collect the fees, it does not waive the right to compel arbitration of any malpractice claim" by the patient.

16

*State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1050 [appellant forfeited an argument it failed to make in the trial court and in its opening brief]; *Safeway Wage & Hour Cases* (2019) 43 Cal.App.5th 665, 687, fn. 9 [appellant forfeited an argument made for first time in its reply brief on appeal].) Because the trial court's order "is presumed to be correct" and the appellant has the burden to affirmatively show the trial court erred (*Jameson v. Desta*, *supra*, 5 Cal.5th at p. 608-609), LaserAway's failure to address a basis of the court's substantive unconscionability ruling requires us to affirm the court's order. (See *Golden Door Properties, LLC*, at p. 558 [appellant's "failure to address" court's "ruling in its opening brief compels the conclusion the trial court's ruling on that point must be affirmed"]; *State Water Resources Control Bd.*, at p. 836 ["Where the trial court based its judgment on the determination that petitioners failed to exhaust their administrative remedies, petitioners could not simply overcome the presumption of correctness by ignoring that issue in their opening briefs."].)

Even if LaserAway had not forfeited the argument on appeal, we would not consider it because LaserAway took the opposite position in the trial court, conceding the arbitration agreement allowed LaserAway to file a claim in court for unpaid fees. "'The rule is well settled that the theory upon which a case is tried must be adhered to on appeal. A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.'" (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1350, fn. 12; accord, *Vasquez v. SOLO 1 Kustoms, Inc.* (2018) 27 Cal.App.5th 84, 96.)

17

LaserAway admitted in the trial court that the arbitration agreement lacks mutuality, which indicates a high degree of substantive unconscionability.  Indeed, such a one-sided provision in favor of the stronger party imposing an adhesive arbitration agreement on a weaker party is a hallmark of substantive unconscionability.  (See *Armendariz, supra,* 24 Cal.4th at p. 118 ["the doctrine of unconscionability limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting that forum for itself"]; *Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 86 ["the arbitration agreement is lacking in mutuality in that it 'requir[es] arbitration only for the claims of the weaker party but a choice of forums for the claims of the stronger party'"]; *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 725 [arbitration agreement was "unfairly one-sided because it compel[led] arbitration of the claims more likely to be brought by . . . the weaker party, but exempt[ed] from arbitration the types of claims that [were] more likely to be brought by . . . the stronger party"].)

Moreover, the arbitration agreement had additional indicia of substantiative unconscionability, including the provision that required Swain to pay arbitration fees she could not afford. Courts may use the unconscionability doctrine to protect "consumers against fees that unreasonably limit access to arbitration." (*Sanchez, supra*, 61 Cal.4th at p. 920.)  A consumer seeking to avoid an arbitration agreement must make "a showing that . . . fees and costs in fact would be unaffordable or would have a substantial deterrent effect" on his or her decision to seek relief, which the court must determine "on a case-by-case basis . . . ."  (*Ibid.*; see *Penilla v. Westmont Corp.* (2016) 3 Cal.App.5th

18

205, 218 ["'it is substantively unconscionable to require a consumer to give up the right to utilize the judicial system, while imposing arbitral forum fees that are prohibitively high'"]; *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 90 [same].)

Here, the arbitration agreement not only included a cost-splitting provision for the arbitration fees, but called for the most expensive kind of arbitration: one with a three-arbitrator panel.[7] Swain's attorney presented evidence of the hourly rates for arbitrators in Southern California, which ranged from $375 to $1,000, and daily rates of up to $10,000.  In her declaration Swain stated that her monthly salary was approximately $2,000 and that she could not afford to pay the fees charged by arbitrators.  The cost of such an arbitration panel would not only deter Swain from seeking relief, it would effectively prohibit it.  Even if Swain's "party arbitrator" and the "neutral arbitrator" charged fees on the low end of those typically charged by arbitrators, Swain would incur at least $562.50 in fees for each hour of the arbitration ($375 for her party arbitrator, plus half the cost of the neutral arbitrator).  Even a few hours of the arbitrators' time would exceed Swain's monthly income, not to mention the other administrative fees and costs Swain would

_____

[7] The agreement stated:  "Each party shall select an arbitrator (party arbitrator) within thirty days and a third arbitrator (neutral arbitrator) shall be selected by the arbitrators appointed by the parties within thirty days of a demand for a neutral arbitrator by either party.  Each party to the arbitration shall pay such party's pro rata share of expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees, or other expenses incurred by a party for such party's own benefit."

incur. And the agreement did not include any kind of protection for a patient like Swain, such as a provision that would "limit the amount of arbitration fees" a party could incur, allow a "waiver" or "allocation of such fees at the discretion of the arbitrator[s]," or permit Swain "to bring an otherwise arbitrable claim in small claims court." (*Penilla v. Westmont Corp.*, *supra*, 3 Cal.App.5th at p. 219; see *Gutierrez v. Autowest*, *supra*, 114 Cal.App.4th at p. 91 ["Despite the potential for the imposition of a substantial administrative fee, there is no effective procedure for a consumer to obtain a fee waiver or reduction."].) Thus, the fee-splitting provisions were also highly unconscionable. (See *Penilla*, at pp. 218-219 [arbitration agreement was unconscionable where the arbitrators charged hourly rates of $500 to $800, and the plaintiffs' monthly salary was less than $3,000]; *Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1582-1583 [arbitration agreement requiring a three-arbitrator panel was unconscionable where the arbitrators' hourly rates were at least $400, and the plaintiffs' annual salaries ranged from $55,000 to $70,000]; see also *Gutierrez*, at pp. 90-91 [arbitration agreement was unconscionable where the plaintiff could not afford the $8,000 administrative fee required to initiate arbitration].)

LaserAway argues the fee provision is not unconscionable because section 1284.3, subdivision (b)(1), provides that "[a]ll fees and costs charged to or assessed upon a consumer party by a private arbitration company in a consumer arbitration, exclusive of arbitrator fees, shall be waived for an indigent consumer." Section 1284.3, however, specifically excludes waiver of arbitrator fees—the fees Swain showed she could not afford. Section 1284.3 therefore would provide little relief to Swain here. (See *Penilla v. Westmont Corp.*, *supra*, 3 Cal.App.5th at p. 220 ["section 1284.3

20

does not render arbitration affordable" because it "does not affect the prohibitively high cost of arbitrator fees"].)

Thus, under the sliding scale unconscionability analysis, the trial court did not err in ruling LaserAway could not enforce the arbitration agreement against Swain. Although the agreement may have had only a minimal degree of procedural unconscionability, there was a high degree of substantive unconscionability. LaserAway conceded the agreement required only Swain to arbitrate the claims she was likely to bring, with no explanation of why this one-sided, archetypically unconscionable provision was reasonable. The provision requiring Swain to pay half the fees of a three-arbitrator panel (plus arbitration costs), well above what she could afford, effectively prohibited her from bringing her claims. And, as stated, LaserAway conceded the prohibition on seeking injunctive relief, though severable, was unconscionable. These provisions were "unreasonably favorable" to LaserAway, the party that drafted and conditioned its services on Swain signing the agreement, and were "sufficiently unfair" to "withhold enforcement" of the agreement. (*OTO*, *supra*, 8 Cal.5th at pp. 125-126.)[8]

---

[8] LaserAway does not argue the cost-splitting provision or three-arbitrator provision is severable from the remainder of the agreement, nor did LaserAway seek to enforce the agreement absent those terms. (See *Nguyen v. Applied Medical Resources Corp.* (2016) 4 Cal.App.5th 232, 255-256 [trial court did not abuse its discretion by severing substantively unconscionable cost-splitting provision from the arbitration agreement].)

21

C.   *LaserAway Failed To Show the Arbitration Agreement Was Not Unconscionable Under Section 1295*

LaserAway contends that, even if the arbitration agreement has some characteristics of unconscionability, the agreement is not unconscionable as a matter of law because it complies with section 1295. "Section 1295 provides a procedure for a patient and a health care provider to enter into an agreement to waive their rights to a jury trial and resolve medical malpractice claims by arbitration." (*Rodriguez v. Superior Court* (2009) 176 Cal.App.4th 1461, 1467.) Section 1295, subdivision (e), provides that such an arbitration agreement "is not a contract of adhesion, nor unconscionable nor otherwise improper, where it complies with subdivisions (a), (b), and (c) of this section."[9] Because section 1295, subdivision (e), is an exception to an otherwise applicable unconscionability defense, LaserAway, the party relying on the exception, has the burden to show it applies. (See *Acosta v. Glenfed Development Corp.* (2005) 128 Cal.App.4th 1278, 1293 ["[w]ith respect to the exception" to defendant's affirmative defense, "plaintiffs, not defendants, had the burden of production"]; see also Evid. Code, § 500 ["Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting."].) LaserAway again forfeited its argument based on section 1295, subdivision (e), by failing to adequately raise it in

---

[9]   Section 1295, subdivisions (a) and (b) require the agreement to include certain language and formatting. Subdivision (c) provides the agreement governs "until or unless rescinded by written notice within 30 days of signature."

the trial court. LaserAway mentioned section 1295 in its petition to compel arbitration in passing, but did not cite subdivision (e), much less argue the agreement was not unconscionable because it complied with subdivisions (a), (b), and (c).

Forfeiture aside, LaserAway did not submit sufficient evidence that section 1295 applies. Section 1295 applies to "health care providers," a term defined in subdivision (g)(1) as a person, clinic, dispensary, or facility that is licensed or certified under one of the laws listed in the statute, as well as the provider's "legal representatives." (See § 1295, subds. (a), (g).) LaserAway made no showing in the trial court, and makes no showing on appeal, it is licensed or certified under one of the enumerated laws and therefore is a health care provider for purposes of section 1295. Although LaserAway asserts Heckmann "substantiat[ed]" in her declaration "that LaserAway is a medical group providing patient care within" the meaning of section 1295, subdivision (g)(1), Heckmann did not provide any description of the medical services LaserAway offers or identify the licenses and certifications LaserAway holds.

## DISPOSITION

The order is affirmed.  Swain is to recover her costs on appeal.


SEGAL, J.


We concur:


PERLUSS, P. J.


FEUER, J.

Filed 11/3/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MIRANDA SWAIN, | B294975 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SC129042) |
| v. | |
| LASERAWAY MEDICAL GROUP, INC., | **ORDER MODIFYING OPINION, AND CERTIFYING OPINION FOR PUBLICATION [NO CHANGE IN APPELLATE JUDGMENT]** |
| Defendant and Appellant. | |

THE COURT:

The opinion in this case filed October 13, 2020 is modified as follows:

On page 22, the Section C heading in the Discussion Section, which states: *LaserAway Failed To Show the Arbitration Agreement Was Not Unconscionable Under Section 1295*, is deleted and replaced with: *LaserAway Failed To Show Section 1295 Applied*.

The opinion in this case filed October 13, 2020 was not certified for publication.  Because the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the non-parties' requests for publication under California Rules of Court, rule 8.1120(a), are granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

This order does not change the appellate judgment.

_____

PERLUSS, P. J.              SEGAL, J.              FEUER, J.