Filed 10/8/25; Certified for Publication 10/31/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| COCOA AJ HOLDINGS, LLC,<br> Cross-complainant and Appellant,<br>v.<br>STEPHEN SCHNEIDER,<br> Cross-defendant and Respondent. | A167555<br><br>(City & County of San Francisco Super. Ct. No. CGC-22-600052) |

Cocoa AJ Holdings, LLC (Cocoa) is the developer of GS Heritage Place (GS Place), a mixed condominium development located in San Francisco's Ghirardelli Square. GS Place consists of 53 residential units, including timeshares, and one commercial unit. Stephen Schneider is the owner of a timeshare interest in a fractional unit at GS Place.

In 2018, Schneider filed a class action lawsuit against Cocoa and others related to the management of GS Place and use of units as hotel rooms. In 2020, the parties entered into a settlement agreement that fully resolved that lawsuit.

In 2022, Schneider filed another lawsuit against Cocoa. Cocoa filed a cross-complaint against Schneider alleging intentional interference with prospective economic advantage, breach of contract, unjust enrichment, and

1

defamation.  Schneider brought a special motion to strike Cocoa's cross-complaint under anti-SLAPP[1] law (Code Civ. Proc.,[2] § 425.16).  The trial court granted the motion, and Cocoa appeals.  We conclude the claims in the cross-complaint arise from Schneider's protected activity, and Cocoa failed to establish a likelihood of success on the merits of any of its claims.  Accordingly, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

*General Background*

GS Place is governed by a "Declaration of Covenants, Conditions, and Restrictions and Fractional Plan of GS Heritage Place, A Condominium" (CC&Rs).  The CC&Rs set forth a "Fractional Plan" under which certain residential units are designated as fractional units (i.e., timeshares).  Whole units are those removed from the fractional plan (and thus not divided into fractional interests).

Of the 53 residential units in GS Place, only four were originally designated as whole units.  Thirty fractional units were made available for sale, and Cocoa retained ownership of the remaining 19 units.

As the owner of a timeshare interest in a fractional unit, Schneider has voting privileges in the GS Place homeowners association, Cocoa Residential Owners' Association, Inc. (HOA), pursuant to the terms of the CC&Rs.

*Class Action Litigation and 2020 Settlement Agreement*

In 2018, Schneider (as the sole named plaintiff) filed a class action lawsuit against Cocoa, the HOA, and other defendants.  In that action, Schneider claimed defendants had improperly rented out fractional units for

---

[1] SLAPP is short for "strategic lawsuit against public participation."

[2] All undesignated statutory references are to the Code of Civil Procedure.

hotel use (thereby limiting floating fractional owner access to the residence units), allocated hotel expenses to non-developer fractional interest owners, miscalculated management fees, and failed to negotiate at arm's length.

In February 2020, the parties reached a "Class Action Settlement Agreement and Release of Claims" (the settlement agreement) to fully resolve that litigation, which Schneider signed both individually and as the class representative. The settlement agreement contains a section entitled "No Solicitation, Publication or Disparagement; Cooperation":

"Plaintiff shall not solicit or recruit any other individuals to file any claims against Defendants, or any of them, including through direct or indirect solicitation, articles, blog posts, social media or any similar methods or items. . . .

"Plaintiff further agrees that he shall not make, circulate or transmit any false, derogatory or disparaging statements, verbally or in writing, about or concerning Defendants, or any of them, and that he shall not direct, encourage or support, either directly or indirectly, anyone else to make, circulate or transmit such statements. He further agrees that in future dealings with the HOA and other Defendants, he will cooperate constructively and in good faith, as will the HOA and other Defendants with Plaintiff, and refrain from taking actions that unreasonably interfere with the ability of Defendants and their representatives to carry out their functions and responsibilities in connection with the Project."

The settlement agreement contains a general release of claims by Schneider, in which he "fully, finally and forever generally releases and discharges the Released Parties from any and all claims, demands, causes of action, suits, liabilities, assessments, judgments, obligations of any kind, whether known or unknown, arising at any time prior to entry of the Order of

3

Preliminary Approval, including without limitation those claims or causes of action that he asserted or could have asserted in the Lawsuit." It also contains a waiver pursuant to Civil Code section 1542.

Further, the settlement agreement provides: "This Agreement constitutes the complete and final understanding of the parties with respect to the subject matter of this Agreement." It also includes a duty of all parties to "abide by all of the terms of this Agreement in good faith and to support it fully."

The settlement agreement was approved by the trial court on December 20, 2020.

*Schneider's Complaint and Cocoa's Cross-complaint*

In June 2022, Schneider filed a complaint against Cocoa.

In October 2022, Cocoa filed a cross-complaint against Schneider. The cross-complaint alleged four claims: (1) intentional interference with prospective economic advantage[3]; (2) breach of contract (i.e., the settlement agreement); (3) unjust enrichment; and (4) defamation.

The following allegations are set forth in the cross-complaint. In 2021, Cocoa decided to sell its 19 unsold units as whole units rather than fractional units, which required amending the CC&Rs. Schneider engaged in a multiyear campaign to prevent it from doing so to force Cocoa to continue paying higher annual maintenance fees that apply to fractional units, thereby reducing his own annual fees. The prior class action litigation

---

[3] While the first cause of action is titled intentional interference with prospective economic relations, we refer to it by its more common name, intentional interference with prospective economic advantage. (See, e.g., *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 378 [same tort variously known as interference with " 'prospective economic advantage,' " " 'prospective contractual relations,' " or " 'prospective economic relations' "].)

resulted in a settlement agreement that included a general release and a nondisparagement clause; Cocoa alleged that Schneider was in violation of both provisions.

In September 2020, Schneider created "an 'Independent Ghirardelli Owners Association (IGOA),' with no official designation or purpose other than to frustrate efforts of Cocoa" by opposing amendments to the CC&Rs that would allow Cocoa to sell the 19 unsold units as whole units. The next month, under the guise of IGOA, Schneider reached out to an expert in the fractional industry who had been retained by the board of directors of GS Place (the Board) to conduct an analysis that was a necessary step to change the CC&Rs to allow Cocoa to sell its units as whole units. When the expert declined to meet with Schneider and his attorney, Schneider began harassing the expert and the Board. By January 2021, again through IGOA, Schneider demanded in writing that Cocoa negotiate with him and his attorney as to amendments to the CC&Rs and informed Cocoa he intended to bring legal action if his demands were not met; he copied that communication to all fractional interest owners at GS Place.

Cocoa alleged that it continued to work with the owners of GS Place, including Schneider, to reduce the effect of selling its units as whole units to GS Place and the fractional owners. By August 2021, Schneider sent a list of demands. In September 2021, Cocoa announced it agreed to many of those demands and that it would be moving forward with a vote on amendments to the CC&Rs; Schneider continued to threaten legal action. In October 2021, prior to a scheduled vote on the amendments, Schneider forwarded a letter to all GS Place fractional owners that was purportedly written by a Board member and fractional interest owner. Cocoa asserted the letter contained "inaccurate and malicious accusations that Cocoa . . . and others had

5

committed numerous violations of the Davis-Sterling [*sic*] Common Interest Development Act[4] in connection with the upcoming vote . . . .”

Schneider, assuming the vote would move forward and be successful, began contacting individual fractional interest owners to solicit funding to bring a lawsuit against Cocoa. He then brought multiple legal actions, apparently referring to two lawsuits he brought in December 2021 against the HOA and others (but not Cocoa) for violations of the Davis-Stirling Act, including claims for failure to permit him to speak at HOA meetings and failure to conduct HOA meetings under the proper procedure. In May 2022, Schneider began messaging all fractional interest owners as the representative of a new, unofficial organization called the Ghirardelli Owners Legal Fund (GOLF), with the goal of blocking Cocoa from selling the units as whole units. Cocoa averred Schneider also disrupted passage of a new annual budget for GS Place, thereby requiring Cocoa to pay higher maintenance fees, which benefited Schneider as a fractional interest owner.

All four causes of action in the cross-complaint incorporated and repeated all preceding paragraphs “as if fully set forth [t]herein.” Each claim further alleged specific actions by Schneider in support of the respective causes of action.

*The Anti-SLAPP Motion*

In November 2022, Schneider filed the special motion to strike Cocoa’s cross-complaint, which underlies this appeal. He asserted the conduct complained of in the cross-complaint was based on the exercise of his constitutional rights to petition the courts and to free speech. Specifically, Schneider argued the claims alleged by Cocoa were based on his filing the prior class action and the two December 2021 lawsuits, as well as other

---

4 Civil Code section 4000 et seq. (Davis-Stirling Act).

protected petitioning activity and his speech as to HOA management issues. Finally, Schneider argued Cocoa could not establish a probability of prevailing on any causes of action.

In opposition, Cocoa disputed that the claims arose from protected litigation activity, asserting the only connection to past litigation in the cross-complaint concerned Schneider's breach of contract (which did not trigger anti-SLAPP protection) and that other references to litigation merely provided context for its claims. Cocoa further contended Schneider's speech related to association management issues was not protected because it did not concern a matter of public interest. Cocoa argued it established a probability of prevailing on the merits, in part because "the gravamen of [its] claims is noncommunicative conduct outside the scope of the litigation privilege." The opposition was supported by a declaration by Cocoa's "Investment Member Representative."

In reply, Schneider asserted Cocoa failed to identify any specific defamatory statements, that references to the past and ongoing litigation was not merely context but the "entire focus" of the cross-complaint, and that his statements and litigation actions concerned the public interest, thereby falling under anti-SLAPP protections. Schneider requested the court take judicial notice of the December 2021 complaints filed by Schneider, among other documents.

The court ordered Cocoa to file a supplemental brief clearly identifying which of the factual assertions in its cross-complaint were in support of each cause of action and which allegations merely provided background information. Cocoa complied.

The court issued a tentative ruling granting the motion to strike. The tentative ruling found "each and every claim asserted in the cross-complaint

arises out of protected activity (e.g., litigation and association management issues)" and Cocoa failed to carry its burden to show a probability of prevailing on the merits as to any of the " 'protected' " claims.

At a March 2023 hearing on the motion, Cocoa reiterated its claim that the litigation privilege does not apply to a breach of contract claim involving a settlement agreement and that Schneider had waived the right to anti-SLAPP protection. When the court asked Cocoa to point out what in the cross-complaint concerned litigation and the association management issues, Cocoa replied that "the reason why the anti-SLAPP protections do not apply here" was because Schneider entered into the settlement agreement, waiving those protections, and then breached that agreement through his subsequent actions.

At the conclusion of the hearing, the trial court adopted the tentative ruling as its permanent order and granted Schneider's anti-SLAPP motion. Cocoa appealed.

## DISCUSSION

The anti-SLAPP statute authorizes the filing of a special motion to strike claims arising from any act "in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) The statute was enacted to encourage "continued participation in matters of public significance" and to ensure "that this participation should not be chilled through abuse of the judicial process," and its provisions must be construed broadly. (*Id.*, subd. (a); *Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21.)

"Resolution of an anti-SLAPP motion involves a two-prong inquiry. The first prong requires that [Schneider] make a prima facie showing that

8

the challenged claim or claims arise from [his] constitutionally protected free speech or petition rights. [Citation.] If [he] meets [his] burden, then under the second prong of the inquiry, the burden shifts to [Cocoa] to demonstrate the merit of the claim by establishing a probability of success." (*Durkin v. City and County of San Francisco* (2023) 90 Cal.App.5th 643, 651.) If Cocoa fails to carry its burden at the second prong, the motion to strike is granted. (*Schaffer v. City and County of San Francisco* (2008) 168 Cal.App.4th 992, 998.)

We review an order granting or denying an anti-SLAPP motion de novo. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).) In making our determination, we consider the pleadings as well as supporting and opposing affidavits regarding the facts upon which the liability or defense is based. (§ 425.16, subd. (b)(2).)

## I. The Claims Arise from Protected Activity

We exercise independent judgment in determining whether, based on our own review of the record, the claims challenged in the anti-SLAPP motion "arise from" protected activity. (*Park, supra,* 2 Cal.5th at p. 1067; § 425.16, subd. (b)(1).) To make this showing, Schneider, as the moving party, must demonstrate that his conduct by which Cocoa claims to have been injured falls within one of the categories in section 425.16, subdivision (e), described below. (*Park*, at p. 1063.)

In making this determination, we assess the elements of each of the claims in the cross-complaint, what actions by Schneider are alleged by Cocoa to establish those elements, and whether those actions are protected. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1015.) At this first step, "[i]t does not matter that other unprotected acts may also have been alleged within what has been labeled a single cause of action; these are 'disregarded

9

at this stage.' [Citation.]  So long as a 'court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached' with respect to these claims." (*Id.* at p. 1010.)  Nonetheless, allegations in the cross-complaint that merely provide context, without supplying the elements of the claims, are not subject to the anti-SLAPP statute.  (*Id.* at p. 1015.)

## A. Relevant Protected Activity

Section 425.16 protects litigation-related activity, i.e., "any written or oral statement or writing made before a . . . judicial proceeding" or "in connection with an issue under consideration or review by a . . . judicial body."  (§ 425.16, subd. (e)(1) & (2).)  " 'The anti-SLAPP protection for petitioning activities applies not only to the filing of lawsuits, but extends to conduct that relates to such litigation, including statements made in connection with or in preparation of litigation.  [Citation.]  Indeed, courts have adopted "a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16." ' " (*Alfaro v. Waterhouse Management Corp.* (2022) 82 Cal.App.5th 26, 33.)

Even where litigation has not commenced, "if a statement 'concern[s] the subject of the dispute' and is made 'in anticipation of litigation "contemplated in good faith and under serious consideration," ' [citation] then the statement may be petitioning activity protected by section 425.16." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1268.)  The statement need not be made to parties or potential parties to the litigation as long as it relates to the substantive issues in the litigation and is directed to persons having some interest in it.  (*Id.* at pp. 1266, 1270.)  Further, communicative conduct concerning the solicitation of litigation funding is a protected act in

furtherance of petitioning activity. (*Michael K. v. Cho* (2025) 113 Cal.App.5th 1, 10, 12.)

Relevant here, section 425.16, subdivision (e)(4) protects "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest," the so-called catchall provision. (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1243.) Although not defined by section 425.16, " ' "public interest" within the meaning of the anti-SLAPP statute has been broadly defined to include, in addition to government matters, " 'private conduct that . . . affects a community in a manner similar to that of a governmental entity.' " ' " (*Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes* (2017) 9 Cal.App.5th 119, 131.) Therefore, several courts have found such protected activity exists in the context of disputes with a homeowners association. (*Id.* at pp. 131–132 [collecting cases].)

For example, in *Country Side Villas Homeowners Assn. v. Ivie* (2011) 193 Cal.App.4th 1110, 1113 (*Country Side*), Ivie objected to her homeowners association's change in practice as to whether individual homeowners or the association was responsible for the costs of maintaining balconies and siding on individual units. The association sued for declaratory relief in interpreting the association's governing documents regarding maintenance obligations and amending those obligations, and Ivie filed an anti-SLAPP motion to strike. (*Id.* at pp. 1113–1114.) The appellate court concluded the association's complaint arose from Ivie's exercise of her right of free speech in criticizing and speaking out against the association's board, which was protected activity as a matter of public interest. (*Id.* at pp. 1117–1118.) Specifically, the association's change in position as to who paid for balcony and siding repair "impacted all members of the association, whether or not

11

their homes had balconies or were in need of siding repair, because the expenses would now be borne by all." (*Id.* at p. 1118.) As the association had the power to affect the lives of many individuals through its decisionmaking process, Ivie's criticism of the board's actions was a matter of public concern under section 425.16. (*Country Side*, at p. 1118.)

## B. Cocoa's Claims Arise from Schneider's Litigation-related and Association Management Activity

We begin with an overview of the elements of the claims in the cross-complaint. To prove intentional interference with prospective economic advantage, Cocoa must show: (1) the existence of an economic relationship between Cocoa and some third party that contains the probability of future economic benefit to Cocoa; (2) Schneider's knowledge of the relationship; (3) intentionally wrongful acts by Schneider designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by Schneider's action. (*Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.* (2017) 2 Cal.5th 505, 512 (*Roy Allan*).) To prove unjust enrichment, Cocoa must prove Schneider received and unjustly retained a benefit at Cocoa's expense. (*Ojjeh v. Brown* (2019) 43 Cal.App.5th 1027, 1037 (*Ojjeh*).) To prove defamation, Cocoa must show a publication that is false, defamatory, unprivileged, and has a natural tendency to injure or that causes special damage. (*Bishop v. The Bishop's School* (2022) 86 Cal.App.5th 893, 909.) Finally, Cocoa's breach of contract claim requires it to show Schneider breached an enforceable settlement agreement between the parties, thereby damaging Cocoa. (*Ojjeh*, at p. 1037.)

With these elements in mind, we turn to whether the cross-complaint supplies one or more of the elements of each cause of action with allegations of protected activity by Schneider.

12

The cross-complaint asserts Schneider engaged in various activities to block Cocoa from selling its 19 units as whole units, including that he represented himself as the unofficial representative of GS Place fractional unit owners to demand negotiations with the HOA board and Cocoa; actively campaigned to oppose any efforts of Cocoa to exercise its ownership over its 19 whole units (i.e., via amending the CC&Rs); made false or misleading statements in e-mails and letters to GS Place unit owners, as well as in open meetings, insinuating Cocoa and its affiliates engaged in wrongful or misleading conduct; and repeatedly threatened legal action against Cocoa, its related entities, the HOA board, and other parties to intimidate them from allowing Cocoa to exercise its rights.  These alleged efforts by Schneider to block amendments to the CC&Rs to prevent Cocoa from selling its units as whole units supplied elements for the claims of intentional interference with prospective economic advantage, unjust enrichment, and defamation.

It is apparent that at least part of this alleged conduct arises from protected activity under section 425.16 related to association management conduct.  That is, Schneider's alleged active campaigning to oppose Cocoa's amendments of the CC&Rs, including making statements to over 150 other fractional interest owners of GS Place in support of his assertions that the HOA board was acting improperly or illegally, as well as acting on their behalf (even in an unofficial capacity), was a matter of public interest to those other owners, whose lives would be affected—at least financially—by the potential changes to the CC&Rs.  (See *Country Side*, *supra*, 193 Cal.App.4th at pp. 1117–1118.)

Specifically, the cross-complaint itself stated that fractional interest owners "benefit[] directly from" preventing changes to the CC&Rs because, if Cocoa were able to sell its units as whole units, it would no longer continue to

13

pay annual maintenance fees at the same rate as fractional units. Thus, like in *Country Side*, the change in position as to whether Cocoa's units were able to be sold as whole units affected *all* fractional interest owners—over 150 of whom Schneider was allegedly making statements to in an effort to prevent changes to the CC&Rs—because they, like Schneider, would bear higher costs as a result. (See *Country Side*, *supra*, 193 Cal.App.4th at p. 1118.) Schneider's active campaign to criticize the HOA board (including disseminating information claiming wrongful conduct) was therefore a matter of public concern under section 425.16. (See *Country Side*, at p. 1118.)

Additionally, some of Schneider's alleged active campaign involved protected litigation-related activity concerning his anticipated lawsuits against the HOA for violations of the Davis-Stirling Act, which were filed in December 2021, as well as his communications with individual fractional interest owners to solicit funding for a suit against Cocoa. (See *Neville v. Chudacoff*, *supra*, 160 Cal.App.4th at pp. 1266, 1268, 1270 [statements concerning subject of the dispute made to persons with an interest in anticipated litigation are protected conduct]; *Michael K. v. Cho*, *supra*, 113 Cal.App.5th at pp. 10, 12 [communications soliciting litigation funding protected act in furtherance of petitioning activity].) Contrary to Cocoa's assertion, the references to past and current litigation activity in the cross-complaint were not mere context but were integrated into its claims as to Schneider's asserted liability. Hence, protected activity by Schneider supplied elements for Cocoa's claims of intentional interference with prospective economic advantage, unjust enrichment, and defamation.

As to the remaining cause of action, breach of contract, Cocoa asserted Schneider engaged in harassing activities, brought several additional lawsuits against Cocoa and its affiliates, and made disparaging statements to

14

GS Place owners about Cocoa, all of which violated the settlement agreement's release of claims and nondisparagement clause.  This alleged conduct, which supplied the requisite element of breach of the settlement agreement, expressly relates to Schneider's filing lawsuits and speech to GS Place owners.  Therefore, the breach of contract claim also arises from protected activity related to litigation and the public interest of the other fractional owners for the reasons discussed above.

In sum, we conclude Schneider made a prima facie showing that Cocoa's claims in the cross-complaint are based on allegations arising from protected activity under section 425.16, subdivision (e).  Accordingly, we turn to the second prong in the analysis.

## II. Cocoa Fails To Establish a Probability of Prevailing on the Merits

Cocoa bears the burden of demonstrating a probability of success on the merits of its claims.  (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788 (*Monster Energy*).)  We do not weigh evidence or resolve conflicting factual claims; rather, our inquiry is limited to whether Cocoa has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment.  (*Ibid.*)

In so doing, we accept Cocoa's evidence as true and evaluate Schneider's showing only to determine if that defeats Cocoa's claim as a matter of law.  (*Monster Energy*, *supra*, 7 Cal.5th at p. 788.)  However, Cocoa " 'may not rely solely on its [cross-]complaint, even if verified; instead, its proof must be made upon competent admissible evidence.' " (*Ibid.*)  Cocoa has failed to make this minimal showing as to any of its claims.

As an initial matter, we are not convinced by Cocoa's assertion that, even if Schneider's conduct would otherwise have been protected, "he contracted himself out of anti-SLAPP protection" in the settlement

15

agreement. Cocoa avers that all of Schneider's alleged conduct falls within the scope of the settlement agreement's nondisparagement clause and its agreement to cooperate constructively and in good faith with Cocoa in future dealings. In support, Cocoa cites *Monster Energy*, *supra*, 7 Cal.5th at page 796, and quotes *Navellier v. Sletten* (2002) 29 Cal.4th 82, 94 (*Navellier*), for the proposition that "a defendant who in fact has validly contracted not to speak or petition has in effect 'waived' the right to the anti-SLAPP statute's protection in the event he or she later breaches that contract."

Cocoa apparently suggests that it can carry its burden of establishing a probability of success on the merits as to *all* its claims merely because its cross-complaint asserted that Schneider violated the settlement agreement. Although the issue of whether Schneider's conduct violated the settlement agreement is relevant to the breach of contract claim—which we discuss below—we decline to read *Monster Energy* or *Navellier* to mean that Schneider *necessarily* waived any and all protection under the anti-SLAPP statute. *Navellier* merely explained that the anti-SLAPP statute does not provide " 'immunity' " for a breach of a release or of other types of contracts affecting speech. (*Navellier*, *supra*, 29 Cal.4th at p. 93.) As in both *Navellier* and *Monster Energy*, we must still evaluate whether Cocoa demonstrates a probability of success on the merits as to each of its claims. (See *Monster Energy*, *supra*, 7 Cal.5th at p. 796 [nonmoving party carried its burden of showing breach of contract claim had merit]; *Navellier*, at p. 95 [remanding for lower court to engage in second-prong analysis of breach of contract and fraud claims].) Turning to that analysis, we conclude Cocoa fails to carry its burden.

16

## A. Intentional Interference with Prospective Economic Advantage

As noted above, intentional interference with prospective economic advantage requires showing: (1) the existence, between Cocoa and some third party, of an economic relationship that contains the probability of future economic benefit to Cocoa; (2) Schneider's knowledge of the relationship; (3) intentionally wrongful acts by Schneider designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by Schneider's action. (*Roy Allan*, *supra*, 2 Cal.5th at p. 512.) "The tort's requirements 'presuppose the relationship existed *at the time* of [Schneider]'s allegedly tortious acts lest liability be imposed for actually and intentionally disrupting a relationship which has yet to arise.' " (*Id.* at p. 518.)

Cocoa contends it "satisfied the first element by showing that it had an economic relationship with third-party potential buyers of its 19 units" and "intended to sell its 19 units in 2021." As evidence, Cocoa cites the declaration filed by its "Investment Member Representative" in support of its opposition to the motion to strike. However, the relevant cited portion of that declaration merely states: "By 2021, Cocoa AJ decided that it would exercise its rights to sell its uncategorized 19 units as Whole Units." Even accepting that as true, this does not amount to competent, admissible evidence showing an economic relationship between Cocoa and any potential, specific buyer actually existed at the time of Schneider's allegedly tortious conduct. (See *Roy Allan*, *supra*, 2 Cal.5th at pp. 512, 518.)

Cocoa also fails to show as to the third element that Schneider engaged in conduct that was " 'independently wrongful'—that is, ' "wrongful by some measure beyond the fact of the interference itself" ' " because it was

17

" ' "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." ' " (*Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.* (2021) 71 Cal.App.5th 528, 538–539.) Cocoa's bare assertion that he "did this by representing himself as the unofficial 'representative' of GS Place unit owners, harassing Cocoa, and intimidating Cocoa from exercising its rights" falls short of competent evidence of an independently wrongful act. Therefore, Cocoa fails to show a probability of success as to its intentional interference claim.

## B. Defamation

To succeed on its defamation claim, Cocoa must show a publication that is (1) false, (2) defamatory, (3) unprivileged, and (4) has a natural tendency to injure or that causes special damage. (*Bishop v. The Bishop's School*, *supra*, 86 Cal.App.5th at p. 909.) To be defamatory, the statement must contain a provable falsehood. (*ZL Technologies, Inc. v. Does 1–7* (2017) 13 Cal.App.5th 603, 624 (*ZL Technologies*).) We assess " 'whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact,' " considering both the language of the statement and the context in which it is made. (*Ibid.*)

Cocoa contends Schneider defamed it "repeatedly," but the pleadings center on two communications by Schneider.[5] First, a January 2021 communication that Schneider sent to Cocoa and copied to all GS Place

---

[5] The parties dispute whether Cocoa properly pled the alleged defamatory statements in the cross-complaint (see *ZL Technologies*, *supra*, 13 Cal.App.5th at p. 616 [" 'In defamation cases California follows a . . . pleading rule, under which "the words constituting an alleged libel must be specifically identified, if not pleaded verbatim, in the complaint." ' "]). We note that, when directed by the trial court to identify which factual assertions supported its claim of defamation, Cocoa pointed to only the two we describe here.

fractional interest owners in which he "admitted that (1) committing all condominium units owned by [Cocoa] to the fractional regime was not economically viable, (2) that [Cocoa] has the right to its investment in GS Place, and (3) that he had not reviewed the language of any potential amendments to the Original CC&Rs [Cocoa] might propose." In that communication, he also demanded that Cocoa negotiate amendments to the CC&Rs with him and stated "that any plan by [Cocoa] promoting its interests would be inherently damaging to the rest of the ownership of GS place."

It is unclear what provably false assertion of fact Cocoa contends was contained in this first challenged communication. To the extent Cocoa relies on the final statement regarding plans by Cocoa damaging the rest of GS Place ownership, as we discussed in section I, *ante*, it is not disputed that Cocoa's plans to amend the CC&Rs would result in its contributing less to annual fees, which would then be borne by the rest of the owners at GS Place. Considering that context, we do not find Schneider's statement declares or implies a provably false assertion of fact. (See *ZL Technologies*, *supra*, 13 Cal.App.5th at p. 616.)

Second, Cocoa points to an October 2021 letter that Schneider forwarded to GS Place owners, purporting to be from an HOA board member who claimed that Cocoa and others had committed violations of the Davis-Stirling Act. Schneider contends his allegedly defamatory statements are protected by the litigation privilege (Civ. Code, § 47, subd. (b)). We agree.

The litigation privilege protects communications with some relation to an anticipated lawsuit if it is in furtherance of the objects of the litigation, that is, connected with, or has some logical relation to, the action. (*Osborne v. Pleasanton Automotive Co., LP* (2024) 106 Cal.App.5th 361, 383.) As previously discussed, Schneider filed lawsuits asserting violations of the

19

Davis-Stirling Act just two months after forwarding the challenged letter to GS Place owners, which has a logical relation to the actions he filed and is therefore privileged. (See *ibid.*) Cocoa has failed to show a probability of success on the merits of the defamation claim.

### C. Breach of Contract

As to breach of contract, Cocoa was required to show the parties had, and Schneider breached, an enforceable settlement agreement, thereby damaging Cocoa. (*Ojjeh, supra,* 43 Cal.App.5th at p. 1037.) The crux of this matter centers on whether the nondisparagement clause in the settlement agreement served to prevent Schneider from making any disparaging statements about Cocoa beyond matters relevant to the class action suit, as alleged in the cross-complaint.

The relevant provision stated that Schneider "agrees that he shall not make, circulate or transmit any false, derogatory or disparaging statements, verbally or in writing, about or concerning Defendants, or any of them, and that he shall not direct, encourage or support, either directly or indirectly, anyone else to make, circulate or transmit such statements. He further agrees that in future dealings with the HOA and other Defendants, he will cooperate constructively and in good faith, as will the HOA and other Defendants with [Schneider], and refrain from taking actions that unreasonably interfere with the ability of Defendants and their representatives to carry out their functions and responsibilities in connection with the Project."

Cocoa asserts Schneider violated that agreement by: making false, derogatory, and disparaging statements about Cocoa, and encouraging others to do so; forwarding an e-mail to the HOA board asserting Cocoa violated the CC&Rs; repeating those assertions in a communication sent to Cocoa and

20

copying the GS Place owners; forwarding the letter regarding alleged violations of the Davis-Stirling Act; forming IGOA and GOLF with the purpose of obstructing Cocoa; and messaging various GS Place owners on behalf of IGOA.

In response, Schneider contends that the settlement agreement's nondisparagement clause only extended to issues connected to the settlement of the class action suit, i.e., whether Cocoa, the HOA, and other defendants improperly rented out fractional units for hotel use and allocated hotel expenses to fractional interest owners, miscalculated management fees, and failed to negotiate at arm's length. Schneider notes that the only clause in the settlement agreement expressly referencing future obligations of the parties, rather than obligations at the time of the settlement agreement, concerned his agreement to cooperate constructively and in good faith in future dealings with the HOA and other defendants, and to refrain from unreasonably interfering with the ability of defendants to carry out their functions and responsibilities. According to Schneider, none of his actions complained of in the cross-complaint amount to *unreasonable* interference with Cocoa's functions and responsibilities.

We conclude Schneider has the better argument. " 'Compromise agreements are, of course, "governed by the legal principles applicable to contracts generally" . . . [and] "regulate and settle only such matters and differences as appear clearly to be comprehended in them by the intention of the parties and the necessary consequences thereof, and do not extend to matters which the parties never intended to include therein, although existing at the time." ' " (*Olson v. Doe* (2022) 12 Cal.5th 669, 682.) Here, the settlement agreement was reached in February 2020—months prior to any of the conduct alleged to have occurred in the cross-complaint; even though it

21

was not approved by the trial court until December 2020, Cocoa provides no reason why the February 2020 language was expected to encompass the conduct at issue in the cross-complaint.

Further, we find Cocoa's reliance on *Monster Energy* unavailing as, in that case, there was a settlement agreement that included several provisions imposing *confidentiality* obligations on the parties and their counsel, which was also signed by counsel. (*Monster Energy*, *supra*, 7 Cal.5th at p. 785.) After Monster Energy sued counsel, alleging public statements *about the settlement* were in breach of the agreement, the California Supreme Court concluded Monster Energy met its second-prong burden as to its breach of contract claim "[i]n light of the nature and extent of provisions in the agreement . . . purporting to bind counsel, and the other properly submitted evidence." (*Id.* at p. 796; see *id.* at p. 785.) Here, by contrast, there is no evidence, extrinsic or otherwise, indicating that Schneider's actions alleged in the cross-complaint related to the matters in the prior settlement agreement or constituted a breach of that agreement.

Therefore, we conclude Cocoa has failed to demonstrate a probability of success on the merits as to its breach of contract claim.[6]

### D. Unjust Enrichment

To prevail on its unjust enrichment claim, Cocoa must show that Schneider received and unjustly retained a benefit at Cocoa's expense.

---

[6] Cocoa does not present any arguments in its opening brief as to Schneider's alleged breach of the release in the settlement agreement, and we therefore deem the issue forfeited. (See *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 [issues not supported by reasoned legal argument and citation to authority may be treated as forfeited]; see also *Rental Housing Owners Assn. of Southern Alameda County, Inc. v. City of Hayward* (2011) 200 Cal.App.4th 81, 94, fn. 12 [we do not consider points made for the first time in the reply brief].)

(*Ojjeh, supra*, 43 Cal.App.5th at p. 1037.)  Cocoa asserts it has shown a probability of success on this claim based on Schneider's allegedly tortious conduct in violation of the settlement agreement.

However, as discussed above, Cocoa has failed to demonstrate a probability of success on its claims.  Thus, Cocoa has not carried its burden of demonstrating that Schneider *unjustly* retained any benefit.

### DISPOSITION

The order granting the anti-SLAPP motion is affirmed.  Schneider shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

PETROU, J.

WE CONCUR:

TUCHER, P. J.

RODRÍGUEZ, J.

A167555 / *Schneider v. Cocoa AJ Holdings, LLC*

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| COCOA AJ HOLDINGS, LLC,<br><br>      Cross-complainant and Appellant,<br><br>v.<br><br>STEPHEN SCHNEIDER,<br><br>      Cross-defendant and Respondent, | A167555<br><br>(City & County of San Francisco Super. Ct. No. CGC-22-600052) |

THE COURT:‡‡

      The written opinion which was filed on October 8, 2025, has now been certified for publication pursuant to rule 8.1105(b) of the California Rules of Court, and it is ordered published in the official reports.

Dated: _October 31, 2025___            ____TUCHER, P. J._____
                                              Presiding Justice

---

‡‡ Tucher, P. J., Petrou, J., and Rodríguez, J.

Trial Court:      City and County of San Francisco Superior Court

Trial Judge:      Hon. Charles Haines

Counsel:          Manatt, Phelps & Phillips, Benjamin G. Shatz, Christian E. Baker, Thomas, R. Worger, and Kyla Núñez for Cross-complainant and Appellant.

                  Brady & Vinding, Michael E. Vinding for Cross-defendant and Respondent.